Stephen G. Larson, State Bar No. 145225
*slarson@larsonllp.com*
Steven E. Bledsoe, State Bar No. 157811
*sbledsoe@larsonllp.com*
Rick Richmond, State Bar No. 194962
*rrichmond@larsonllp.com*
Paul A. Rigali, State Bar No. 262948
*prigali@larsonllp.com*
**LARSON LLP**
555 Flower Street, Suite 4400
Los Angeles, CA 90071
Telephone: (213) 436-4888
Facsimile: (213) 623-2000

*Attorneys for Plaintiff and the Proposed Class*

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### SOUTHERN DIVISION

| | |
|---|---|
| BEYOND BUSINESS INCORPORATED, d/b/a BIG FISH BAIT & TACKLE, individually and on behalf of others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>AMPLIFY ENERGY CORPORATION d/b/a BETA OFFSHORE, a Delaware Corporation; BETA OPERATING COMPANY, LLC, a Delaware Limited Liability Company; SAN PEDRO BAY PIPELINE COMPANY, a California Company,<br><br>Defendants. | Case No. 8:21-cv-01714-DOC-JDE<br><br>**PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR APPOINTMENT OF INTERIM CO-LEAD CLASS COUNSEL, PURSUANT TO FEDERAL RULES OF CIVIL PROCEDURE, RULE 23(g), AND SUPPORT FOR MOTION TO CONSOLIDATE;**<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT**<br><br>Date:  December 6, 2021<br>Time:  8:30 a.m.<br>Courtroom:  9D<br><br>[*Filed concurrently with Declaration of Stephen G. Larson and [Proposed] Order*]<br><br>Judge: Hon. David O. Carter |

**TO THE HONORABLE COURT, PARTIES, AND THEIR ATTORNEYS OF RECORD:**

PLEASE TAKE NOTICE that, on December 6, 2021 at 8:30 a.m., or as soon thereafter as counsel may be heard by the Honorable David O. Carter, United States District Court for the Central District of California, 411 West Fourth Street, Courtroom 9 D, Santa Ana, CA, 92701-4516, Plaintiff Beyond Business Incorporated, d/b/a Big Fish Bait & Tackle ("Plaintiff"), and Proposed Class Members (collectively "Plaintiffs") will, and hereby do, move f Appointment of Interim Co-Lead Class Counsel, pursuant to Federal Rules of Civil Procedure, Rule 23(g). Fourteen cases arising out of the San Pedro Pipeline Oil Spill are currently pending before this Court. Plaintiff supports the Motions for Consolidation previously filed in four of the actions: *Banzai Surf Co., LLC v. Amplify Energy Corp. et al.*, Case No. 8:21-cv-01669-DOC-JDEx (Dkt. No. 15); *Bradley Bitton et al. v. Amplify Energy Corporation et al.*, 8:21-cv-01694-*DOC-JDE* (Dkt. No. 18); *East Meets West Excursions et al. v. Amplify Energy Corporation et al.*, 8:21-cv-01725-*DOC-JDE* (Dkt. No. 14); and *Charlie's Gyros, Inc. v. Amplify Energy Corporation, et al.*, 8:21-cv-01738-*DOC-JDE* (Dkt. No. 13).

After a review of the various related actions and law firms involved, in the event the Court grants consolidation of these actions, Plaintiff moves this Court to appoint Stephen G. Larson of Larson LLP and Wylie A. Aitken of Aitken * Aitken * Cohn as Interim Co-lead Class Counsel over the consolidated litigation.[1]  As the Court is aware, Mr. Aitken and his firm have already applied to this Court for Co-lead Counsel together with a Northern California-based firm that, like Larson LLP, has extensive class action expertise.  For the reasons set forth below, Plaintiff believes that the putative consolidated litigation and the parties associated with that

---

[1] This Motion was electronically served by email on the date of filing to counsel of record in all fourteen related actions.

PLAINTIFF'S MOTION FOR APPOINTMENT OF INTERIM CLASS COUNSEL, PURSUANT TO FED. R. CIV. P. 23(G); CASE NO. 8:21-CV-01714-DOC-JDE

litigation would be best served if the Interim Co-lead Class Counsel were Stephen G. Larson of Larson LLP and Wylie A. Aitken of Aitken * Aitken * Cohn.

This Motion is based upon the supporting memorandum of points and authorities filed in support; the Declaration of Stephen G. Larson; the Declaration of Wylie A. Aitken submitted in *East Meets West Excursions, et al. v. Amplify Energy Corporation, et al.*, No. 8:21-cv-01738-DOC-JDEx (Dkt. No. 14-1); all other facts the Court may or should take notice of; all files, records, and proceedings in this case; and any oral argument the Court may entertain.

Dated: November 4, 2021                    Respectfully submitted,

**LARSON LLP**

By:  /s/ Stephen G. Larson
     Stephen G. Larson
     Steven E. Bledsoe
     Rick Richmond
     Paul A. Rigali
     555 South Flower Street, Suite 4400
     Los Angeles, CA 90071
     Tel: (213) 436-4888
     Fax: (213) 623-2000

# **TABLE OF CONTENTS**

*Page*

I    INTRODUCTION ................................................................................. 1

II    PROCEDURAL STATUS OF THE RELATED ACTIONS ............................ 4

III    ARGUMENT ..................................................................................... 5

    A.    The Court Should Appoint Interim Co-Lead Class Counsel ................... 5

    B.    The Appointment of a Two-Person Interim Co-Lead Class Counsel Leadership Structure Best Serves the Needs of the Plaintiffs and Proposed Classes ....................................................................... 8

    C.    A Hierarchical Structure with a Two-Firm Leadership Is Highly Effective ................................................................................. 10

    D.    Proposed Interim Co-Lead Class Counsel Have the Experience, Skill Set, Comprehensive Understanding of the Needs of Complex Matters, and the Long-standing Connection with the Communities of Los Angeles and Orange County to Effectively Represent the Classes ........ 11

        1.    Proposed Interim Co-Lead Counsel Devoted Substantial Time and Effort to Identify and Investigate the Claims at Issue and Understand the Affected Communities ....................................... 12

        2.    Proposed Interim Co-Lead Class Counsel Have Significant Experience with Class Actions, Complex Litigation, Multi-Agency and Jurisdictional Matters, and Relevant Subject Matter ................................................................................. 13

            a.    Stephen G. Larson of Larson LLP ..................................... 14

            b.    Wylie A. Aitken of Aitken * Aitken * Cohn ..................... 19

        3.    Larson LLP and Aitken * Aitken * Cohn Individually, and Collectively, Bring More Than Sufficient Resources and Time to Effectively Prosecute This Action ............................................ 19

IV    CONCLUSION ................................................................................. 20

i

1

<u>TABLE OF AUTHORITIES</u>

Page(s)

Federal Cases

*Amador v. Logistics Express, Inc.*,
   No. CV 10-4112-GHK (Jcx), 2010 WL 3489038 (C.D. Cal. Aug. 27,
   2010)...............................................................................................8, 11

*Brazil v. Dole Packaged Foods, LLC*,
   No. 12-cv-01831 LHK, 2014 WL 2466559 (N.D. Cal. May 30, 2014)............. 14

*Burns v. Navistar, Inc.*,
   No. 10CV2295-LAB (BGS), 2011 WL 13071147 (S.D. Cal. Feb. 24,
   2011).................................................................................................... 8

*In re Cardinal Health, Inc. ERISA Litig.*,
   225 F.R.D. 552 (S.D. Ohio 2005) .......................................................... 7

*Cooperman v. Galeos LLC*,
   No. SACV 10-01815 JVS (FFMx), 2011 WL 13227858  (C.D. Cal.
   Apr. 18, 2011)............................................................................... 6, 20

*Four In One Co., Inc. v. SK Foods, L.P.*,
   No. 2:08-cv-03017-MCE-EFB, 2009 WL 747160 (E.D. Cal. Mar. 20,
   2009).......................................................................................... 9, 10

*Friedman v. Guthy-Renker LLC*,
   No. 2:14-cv-06009-ODW, 2016 WL 2758240 (C.D. Cal. May 12,
   2016)................................................................................................. 13

*Kaminske v. JP Morgan Chase Bank N.A.*, No.
   SACV 09-00918 JVS (RNBx), CV 09-6352-JVS (RNBx), 2011 WL
   521338 (C.D. Cal. Jan. 3, 2011) ........................................................ 11

*In re NASDAQ Market-Makers Antitrust Litig.*,
   169 F.R.D. 493 (S.D.N.Y. 1996)......................................................... 14

*Nat'l Fed'n of the Blind v. Target Corp.*,
   582 F. Supp. 2d 1185 (N.D. Cal. 2007) ............................................... 14

*Ramirez v. J.C. Penney Corp. Inc.*,
   No. 6:14-CV-601, 2014 WL 12713071 (E.D. Tex. Aug. 20, 2014) ............... 6, 7

ii

*In re Ring LLC Privacy Litigation*,
   No. CV 19-10899-MWF, 2020 WL 9763065 (C.D. Cal. Nov. 13,
   2020) ................................................................................................. 20

*In re Seagate Technology LLC Litigation*,
   No. 16-cv-00523-RMW, 2016 WL 3401989 (N.D. Cal. June 21,
   2016) ................................................................................................... 8

*In re TFT-LCD Antitrust Litig.*,
   267 F.R.D. 583 (N.D. Cal. 2010) ..................................................... 14

*In re Trader Joe's Tuna Litigation*,
   No. 2:16-cv-01371-ODW, 2016 WL 7407329 (C.D. Cal. Dec. 21,
   2016) ........................................................................................ 6, 11, 17

*White v. TransUnion, LLC*,
   239 F.R.D. 681 (C.D. Cal. 2006) ....................................................... 8

*Wolph v. Acer Am. Corp.*,
   272 F.R.D. 477 (N.D. Cal. 2011) ..................................................... 14

Federal Statutes

Fed. R. Civ. P. 23 ................................................................................. 10

Fed. R. Civ. P. 23(g) ................................................................... 2, 4, 20

Fed. R. Civ. P. 23(g)(1)(A) ................................................................. 11

Fed. R. Civ. P. 23(g)(3) ...................................................................... 11

Other Authorities

Federal Judicial Center, Manual for Complex Litigation, § 21.11 (4th
   Ed. 2004) ............................................................................................ 7

Governance and Legitimacy in the Law of Class Actions, 1999 SUP. CT.
   REV. 337, 388 ...................................................................................... 7

## <u>MEMORANDUM OF POINTS AND AUTHORITIES</u>

### I       INTRODUCTION

Defendants AMPLIFY ENERGY CORPORATION ("AEC"), BETA OPERATING COMPANY, LLC ("BEC"), and SAN PEDRO BAY PIPELINE COMPANY's ("SPBPC") (collectively "Defendants") discharged tens of thousands of gallons of toxic crude oil into and upon the coastal waters and shores of Orange County, California. The geographic impact of Defendants' discharge, however, spans further than the shores of Orange County. Indeed, the affected areas of pollution, items of evidentiary value, and companies and witnesses of import span from the southwestern coast of Los Angeles County to the southern tip of Orange County, a stone's throw away from San Diego County. Accordingly, it cannot be disputed that this crisis concerns a vast stretch of the Southern California coastal region, and thus implicates the interests of numerous California residents and businesses.

Both the instrumentalities of this disaster and its victims are located in Orange County and Los Angeles County. Defendants own and operate the Beta Unit Complex, located roughly nine miles off the Orange County coastline. The Beta Unit Complex is comprised of three oil platforms—Elly, Ellen, and Eureka—and a 17.5-mile-long crude oil pipeline ("San Pedro Bay Pipeline"). Platform Elly controls the flow of crude oil through the San Pedro Bay Pipeline, which extends inland toward Huntington Beach and then proceeds along the coast, roughly 4.5 miles offshore, into the city of Long Beach to the Beta Pump Storage facility, situated in Los Angeles County.

On October 2, 2021, and for an undetermined period before, a fracture in the San Pedro Bay Pipeline released tens of thousands gallons of crude into the Pacific Ocean. The source of the oil spilled from the San Pedro Bay Pipeline is believed to be within a 4,000-foot section of pipeline, situated 4.5-miles offshore, and nearly 100 feet underwater. By Sunday, October 3, 2021, and for weeks thereafter, toxic crude

1    oil washed ashore from Huntington Beach to as far south as Carlsbad, California—

2    over *70 miles* of Southern California's treasured and picturesque coastline.

3         This crisis is not just another oil spill or environmental mishap that caused, and

4    will continue to cause, economic loss to the citizens whose livelihood depend on the

5    coastal waters of Orange County and Los Angeles County. Rather, the Pacific Ocean

6    and these coastal beaches are the heart and soul of Southern California, generally,

7    and Orange County and Los Angeles County, specifically. The local community

8    relies on these beaches and waters for both their economic wellbeing and mental,

9    physical, and emotional health. Defendants were entrusted with this crown jewel of

10   Southern California when they deliberately began their oil production and knowingly

11   exposed the surrounding communities to risks associated with that inherently

12   dangerous activity.

13        Since the discovery of the oil spill, fourteen lawsuits have been filed. *See*

14   Declaration of Stephen G. Larson In Support of Plaintiff's Motion for Appointment

15   of Interim Co-Lead Class Counsel ("Larson Decl."), at ¶ 16. Currently pending

16   before this Court are four motions to consolidate. Upon consolidation of the related

17   actions, Plaintiff hereby requests that the Court grant the present Motion for

18   Appointment of Interim Co-Lead Class Counsel Pursuant to Federal Rules of Civil

19   Procedure, Rule 23(g) ("Motion"), over the consolidated action.

20        The reasons for Mr. Larson's and Mr. Aitken's appointment as interim co-lead

21   counsel are legion. Specifically, Plaintiff's counsel has extensively surveyed the

22   related actions and the many highly qualified lawyers that filed them in an effort to

23   envision a leadership structure that would be best suited to represent the Southern

24   California victims of this environmental disaster. *See* Larson Decl. ¶¶ 16-17. In its

25   analysis, Plaintiff's counsel considered the environmental and class action experience

26   of the firms; familiarity with the local geography and demography; accessibility to

27   victims; knowledge of and experience with the Court's procedures; experience in

28   governmental criminal, civil, and regulatory investigations; reputation for collegiality

and professionalism in working with a large number of other highly-qualified attorneys; and, of course, the willingness and desire to accept the responsibility of a leadership role (and the attendant time and resources required) to oversee and manage this complex litigation. While the vast majority of firms behind the fourteen related cases more than meet many of these criteria, counsel for Plaintiff respectfully submits that whomever the Court should appoint to lead this litigation should be deeply rooted in the communities that are at the center of this environmental disaster.

To that end, Plaintiff respectfully submits that the persons best-suited to lead this litigation are Mr. Larson of Larson LLP and Mr. Aitken of Aitken * Aitken* Cohn.[2] Plaintiff believes that this partnership will yield tremendous dividends for the putative Classes, particularly given that both lawyers and their firms are well acquainted and are primed to work together for the benefit of the victims in this dispute. These firms can leverage their decades of experience in and unique knowledge of the Southern California region directly affected by the present crisis. This Southern California experience and expertise includes, but is not limited to, multi-agency and jurisdictional matters arising out of or involving the regions affected by the present crisis, working with and consulting experts with region-specific knowledge, and genuine relationships with the businesses and residents who have been affected. In order to properly direct that experience and knowledge toward the interests of the injured class members, and provide the greatest efficiency and maximize the likelihood of a positive result for the putative Classes herein, Plaintiff respectfully submits the following proposed leadership structure: Stephen G. Larson

---

[2] As noted above, Aitken * Aitken * Cohn previously moved this Court to be appointed as Interim Co-Lead Class Counsel in four of the related actions, along with another Burlingame-based plaintiff's firm. Plaintiff respectfully submits that Larson LLP, based in Los Angeles County, is better positioned to serve as co-lead counsel along with Aitken * Aitken * Cohn. Plaintiff believes there is a benefit to the victims of this disaster to have two highly regarded Southern California law firms possessing the qualities identified above at the helm of this litigation.

of Larson LLP and Wylie A. Aitken of Aitken * Aitken * Cohn as Interim Co-Lead Class Counsel.

Pursuant to Rule 23(g) of the Federal Rules of Civil Procedure, the Court has the discretion to designate Interim Co-Lead Class Counsel. Mr. Larson and Mr. Aitken are, collectively, extremely well-qualified to represent the putative Classes, particularly in this matter, when both counsel have invested substantial time in investigating Plaintiff's and Class Members' claims and communicating with prospective Class Members. Mr. Larson and Mr. Aitken are ready, willing, and able to continue to devote the personnel and resources required to zealously prosecute this litigation and represent the prospective Classes.

As demonstrated below, Mr. Larson and Mr. Aitken readily meet the requirements of Federal Rules of Civil Procedure, Rule 23(g). Plaintiff, therefore, respectfully requests that this Court appoint Interim Co-Lead Class Counsel as set forth above to protect the interests of the Classes and promote an efficient adjudication of this and any related cases filed in, transferred to, or removed to this Court.

## II   PROCEDURAL STATUS OF THE RELATED ACTIONS

At present, fourteen separate complaints—all asserting generally the same factual allegations and all but one purporting to seek certification of variously defined classes of parties injured by the oil spill—are currently pending before this Court:

| Case Name | Case No. | Date Filed |
|---|---|---|
| *Peter Moses Gutierrez v. Amplify Energy Corporation, et al.* | 8:21-cv-01628-DOC-JDE | 10/4/2021 |
| *Hill's Boat Service, Inc. v. Amplify Energy Corporation, et al.* | 8:21-cv-01734-DOC-JDE | 10/5/2021 |
| *Samuelian v. Amplify Energy, et al.* | 8:21-cv-01658-DOC-JDE | 10/6/2021 |
| *Banzai Surf Co v Amplify Energy* | 8:21-cv-01669-DOC-JDE | 10/7/2021 |

| Case Name | Case No. | Date Filed |
|---|---|---|
| *Quality Seafood v Amplify Energy* | 8:21-cv-01680-DOC-JDE | 10/8/2021 |
| *Davey's Locker Sportfishing, Inc. et al v. Amplify Energy Corporation, et al.* | 8:21-cv-01684-DOC-JDE | 10/11/2021 |
| *Ketcham Tackle, LLC v. Amplify Energy Corp., et al.* | 8:21-cv-01685-DOC-JDE | 10/11/2021 |
| *Newport Surfrider, LLC v. Amplify Energy Corporation, et al.* | 8:21-cv-01686-DOC-JDE | 10/11/2021 |
| *Bradley Bitton, et al. v. Amplify Energy Corporation, et al.* | 8:21-cv-01694-DOC-JDE | 10/12/2021 |
| *Whelan, et al. v. Amplify Energy Corporation, et al.* | 8:21-cv-01706-DOC-JDE | 10/13/2021 |
| *Beyond Business Incorporated v. Amplify Energy Corporation, et al.* | 8:21-cv-01714-DOC-JDE | 10/14/2021 |
| *N.S.T. v. Amplify Energy* | 8:21-cv-01722-DOC-JDE | 10/17/2021 |
| *East Meets West Excursions, et al. v. Amplify Energy Corporation, et al.* | 8:21-cv-01725-DOC-JDE | 10/18/2021 |
| *Charlie's Gyros, Inc. v. Amplify Energy Corporation, et al.* | 8:21-cv-01738-DOC-JDE | 10/20/2021 |

*See* Larson Decl. ¶ 16.

On October 28, 2021, plaintiffs in four of these actions simultaneously filed identical motions to consolidate the fourteen related actions. *See Banzai Surf Co v Amplify Energy, Case No. 8:21-cv-01669-DOC-JDE* (Dkt. No. 15); *Bradley Bitton et al. v. Amplify Energy Corporation et al.*, 8:21-cv-01694-*DOC-JDE* (Dkt. No. 18); *East Meets West Excursions et al. v. Amplify Energy Corporation et al.*, 8:21-cv-01725-*DOC-JDE* (Dkt. No. 14); and *Charlie's Gyros, Inc. v. Amplify Energy Corporation, et al.*, 8:21-cv-01738-*DOC-JDE* (Dkt. No. 13).

## III   ARGUMENT

### A.   The Court Should Appoint Interim Co-Lead Class Counsel

In appropriate cases, courts may appoint an interim co-lead plaintiff structure to coordinate the initial prosecution of a litigation, pending certification of the

5

proposed class. To fulfill this objective, courts routinely appoint interim class counsel at early stages of the litigation prior to any determination of class certification. *In re Trader Joe's Tuna Litigation*, No. 2:16-cv-01371-ODW (AJWx), 2016 WL 7407329, at *3 (C.D. Cal. Dec. 21, 2016) ("*In re Trader Joe's*") (noting that the "multiplicity of suits" necessitated early appointment of interim class counsel); *see also Cooperman v. Galeos LLC*, No. SACV 10-01815 JVS (FFMx), 2011 WL 13227858, at *2 (C.D. Cal. Apr. 18, 2011) (observing that "[w]here multiple firms seek appointment as class counsel, 'the court must appoint the applicant best able to represent the interests of the class'"); *Ramirez v. J.C. Penney Corp. Inc.*, No. 6:14-CV-601, 2014 WL 12713071, at *1 (E.D. Tex. Aug. 20, 2014) (courts may appoint an interim lead plaintiff structure to coordinate the initial prosecution of a litigation) (citing Fed. R. Civ. P. 23(g)).

Interim appointment helps fulfill the many tasks counsel must perform on behalf of the proposed class prior to class certification, which may include the following:

1.  presenting (to the court or defendants) the position of plaintiffs and the proposed class on matters arising during pretrial proceedings;

2.  conducting all discovery and motion practice;

3.  conducting settlement negotiations and, where appropriate, presenting a proposed settlement to the court on behalf of the proposed class;

4.  delegating specific tasks to other counsel, in a manner designed to ensure that pretrial preparation for plaintiffs and the proposed class is conducted efficiently and effectively;

5.  entering into stipulations with opposing counsel;

6.  preparing and distributing status reports to any other law firms that might seek to represent the proposed class;

6

7.    maintaining adequate time and disbursement records covering services as interim class counsel;

8.    monitoring the activities of any other law firms that might seek to represent the proposed class to ensure that schedules are met and unnecessary expenditures of time and funds are avoided; and

9.    performing any other duties that may be incidental to the proper prosecution and coordination of pretrial activities.

*See* Manual for Complex Litigation, ¶¶ 10.221, 40.22 (4th ed. 2004); *Ramirez*, 2014 WL 12713071, at *1 (appointment of interim class counsel may be helpful in situations where "clarify[ing] responsibility for protecting the interests of the class during precertification activities, such as making and responding to motions, conducting any necessary discovery, moving for class certification, and negotiating settlement") (citing Federal Judicial Center, Manual for Complex Litigation, § 21.11 (4th Ed. 2004)).

The appointment of interim co-lead class counsel clarifies the attorneys' roles and responsibilities, formally empowers them to act in the best interests of the proposed class or classes, and assures defense counsel that they are dealing with the authorized representatives of the proposed class. *See generally id.* (discussing the reasons that "[b]efore ruling on class certification, a judge should address . . . [w]hether to appoint interim class counsel . . . ."); *see also In re Cardinal Health, Inc. ERISA Litig.*, 225 F.R.D. 552, 559 (S.D. Ohio 2005) (explaining duties of interim counsel). Appointment of interim class counsel also eliminates any risk that a defendant will try to play rival class counsel against one another to the class's potential detriment. *See* Governance and Legitimacy in the Law of Class Actions, 1999 SUP. CT. REV. 337, 388 (discussing the danger of a "race to the bottom" situation).

Where, as here, multiple class actions have been filed and "some or all" may be consolidated before a single court, appointment of interim class counsel is particularly appropriate. *See In re Seagate Technology LLC Litigation*, No. 16-cv-00523-RMW, 2016 WL 3401989, at *2 (N.D. Cal. June 21, 2016) (quoting Manual for Complex Litigation, ¶¶ 10.221, 40.22 (4th ed. 2004) [" 'In such cases, designation of interim counsel clarifies responsibility for protecting the interests of the class during precertification activities . . . .' "]); *see also Burns v. Navistar, Inc.*, No. 10CV2295-LAB (BGS), 2011 WL 13071147, at *2 (S.D. Cal. Feb. 24, 2011); *Amador v. Logistics Express, Inc.*, No. CV 10-4112-GHK (Jcx), CV 10-4280-GHK (Jcx), 2010 WL 3489038, at *2 (C.D. Cal. Aug. 27, 2010); *White v. TransUnion, LLC*, 239 F.R.D. 681, 683 (C.D. Cal. 2006).

As explained below, Plaintiff submits that a co-lead structure will provide the optimal balance between adequate resourcing and zealous advocacy, on the one hand, and the avoidance of inefficiency and bureaucracy, on the other hand.  Mr. Larson and Mr. Aitken are highly qualified and uniquely well-situated to represent the citizens and businesses of Southern California most affected by this environmental disaster.  They will effectively, fairly, and adequately represent Plaintiff and Class Members of the putative Classes, and their appointment at this stage in the litigation is appropriate because it will further the interests of justice. Further, their respective efforts up to this point would make the requested appointment seamless and immediately impart the aforementioned experience and knowledge to the present actions and prospective Classes.

**B.    The Appointment of a Two-Person Interim Co-Lead Class Counsel Leadership Structure Best Serves the Needs of the Plaintiffs and Proposed Classes**

To date, fourteen lawsuits, as discussed above, (*see* Section II, *supra*), have been filed in or transferred to this Court. Between the fourteen lawsuits, twenty-two

8

PLAINTIFF'S MOTION FOR APPOINTMENT OF INTERIM CLASS COUNSEL, PURSUANT TO FED. R. CIV. P. 23(G); CASE NO. 8:21-CV-01714-DOC-JDE

law firms—comprising 57 attorneys of record—are involved.[3] *See* Larson Decl. ¶ 17. Many, if not most, of the firms have worked together in some capacity in the past or currently do so in the pending litigation. The strengths and talents of those who have worked together, or currently do so, is well recognized, as many of the attorneys of record have strong working relationships with the various firms involved in the present matter. The skill sets, professional relationships, and human resources are a significant benefit to the efficient and effective prosecution of this matter. A well-defined, Interim Co-Lead Class Counsel leadership structure establishes a chain of command through which the talents offered can be focused with precision through organized, thoughtful delegation. *See Four In One Co., Inc. v. SK Foods, L.P.*, No. 2:08-cv-03017-MCE-EFB, 2009 WL 747160, at *3 (E.D. Cal. Mar. 20, 2009) ("The Court nonetheless believes that the appointment of more than two co-lead counsel, and anything other than a single liaison counsel, would engender duplication of effort not in the best interest of either a focused or efficient class representation.").

But as the events of the last month have demonstrated, no litigation of this magnitude can be handled through the need for ongoing consensus of twenty-two law firms in de facto co-leadership positions without a leadership structure being put in place by the Court.

In this case, two California counties are at the epicenter of this disaster—Los Angeles County in which the Long Beach Pump Storage Facility is located and through which a portion of the San Pedro Pipeline runs, and Orange County, which

---

[3] Larson LLP; McCune Wright Arevalo, LLP; Aitken * Aitken * Cohn; Aqua Terra Aeris Law Group; The Matiasic Firm, P.C.; Bentley & More LLP; Bottini & Bottini, Inc.; Capello & Noel LLP; Casey Gerry Schenk Francavilla Blatt & Penfield, LLP; Herman Herman Katz, LLC; Cotchett, Pitre & McCarthy, LLP; Lieff Cabraser Heimann & Bernstein, LLP; Robertson & Associates, LLP; Milberg Coleman Bryson Phillips Grossman, PLLC; Onderlaw, LLC; Joseph Saveri Law Firm, LLP; Westerman Law Corp.; Gross & Klein LLP; The Tidrick Law Firm LLP; Whittington Law Firm; Abye Law Offices; and Perona Langer Beck Serbin & Harrison APC.

9

PLAINTIFF'S MOTION FOR APPOINTMENT OF INTERIM CLASS COUNSEL, PURSUANT TO FED.
R. CIV. P. 23(G); CASE NO. 8:21-CV-01714-DOC-JDE

has borne the brunt of the dispersion of the oil released into the Pacific Ocean and specifically, the Southern California coastline. Law firms that are deeply rooted in these affected communities should be at the forefront of this litigation protecting the victims' interests and holding liable the parties responsible for this disaster.

## C. A Hierarchical Structure with a Two-Firm Leadership Is Highly Effective

As this Court is well aware, the effective and efficient prosecution of any complex matter necessarily includes the question of human resources. Too many attorneys in a position to make important decisions creates the potential for not only discord, but also paralysis. Further, the issue of duplicative work becomes a concern when the chain of command stretches horizontally, rather than vertically. *See id*. By structuring leadership with two Interim Co-Lead Class Counsel, the Court accomplishes two important tasks: (1) two well-accomplished and seasoned attorneys are able to discuss, define, divide, then direct the necessary work to those within or without their firm that are most capable and able to succeed in the task at hand; and (2) ensure adequate resources and inclusiveness, without the unnecessary burdens of bureaucracy, overlap, and expenses. *See* Advisory Committee Note to Fed. R. Civ. P. 23 ("[T]he court should be alert to the need for adequate staffing of the case, but also to the risk of overstaffing or an ungainly counsel structure.").

Here, speed is a critical component of this litigation, both in terms of the preservation of the evidence, especially in the face of multiple ongoing governmental criminal, civil, and regulatory investigations, and in terms of providing financial relief to the victims of this disaster. In addition, the instrumentalities of this leak pose significant challenges to this litigation—whether it be the possibility of multiple causes leading to the release of oil in the coastal waters, and subsequent lack of detection, or the fact that the site of this leak is approximately 4.5 miles offshore under 100 feet of water. Investigation and preparation of the plaintiffs' case is going to be expert intensive, requiring input from experts in multiple highly specialized

10

PLAINTIFF'S MOTION FOR APPOINTMENT OF INTERIM CLASS COUNSEL, PURSUANT TO FED. R. CIV. P. 23(G); CASE NO. 8:21-CV-01714-DOC-JDE

1  disciplines. As a result, lead counsel must have the capacity, both in human resources

2  and financial resources, to vigorously conduct this litigation.

3          Appointing two co-lead counsel will serve the important goals of maximizing

4  resources available for the prosecution of this litigation and also providing for greater

5  inclusion and efficient utilization of the many highly competent and valuable

6  plaintiffs' attorneys that have a long history of working together with the proposed

7  co-lead counsel.  Moreover, this structure will minimize the risk of unnecessary

8  bureaucracy and duplication of efforts that can bloat the fees ultimately sought to the

9  detriment of the class members.

10  **D.    Proposed Interim Co-Lead Class Counsel Have the Experience, Skill Set,**

11         **Comprehensive Understanding of the Needs of Complex Matters, and the**

12         **Long-standing Connection with the Communities of Los Angeles and**

13         **Orange County to Effectively Represent the Classes**

14         A court may designate interim counsel to act on behalf of a putative class

15  before determining whether to certify the action as a class action. *See In re Trader*

16  *Joe's*, 2016 WL 7407329, at *3; *see also* Fed. R. Civ. P. 23(g)(3) (The "court may

17  designate interim counsel to act on behalf of a putative class before determining

18  whether to certify the action as a class action.") When appointing interim class

19  counsel, courts consider "(1) the work counsel has done in identifying or

20  investigating potential claims in the action; (2) counsel's experience in handling class

21  actions, other complex litigation, and the types of claims asserted in the action;

22  (3) counsel's knowledge of the applicable law; and (4) the resources that counsel will

23  commit to representing the class." Fed. R. Civ. P. 23(g)(1)(A); *Kaminske v. JP*

24  *Morgan Chase Bank N.A.*, No. SACV 09-00918 JVS (RNBx), CV 09-6352-JVS

25  (RNBx), 2011 WL 521338, at * 2 (C.D. Cal. Jan. 3, 2011); *Amador*, 2010 WL

26  3489038, at *2.

27

28

1.     **Proposed Interim Co-Lead Counsel Devoted Substantial Time and Effort to Identify and Investigate the Claims at Issue and Understand the Affected Communities**

Mr. Larson took great pains to understand not only the intricate details, but also the high-level landscape, of the oil spill at issue. As can be seen from the respective complaints (Complaint, Dkt. No. 1), the factual and legal aspects of the present matter—including the multi-agency and jurisdictional components, considerations of pipeline flow rate and monitoring capabilities of any movement of the San Pedro Bay Pipeline, and, critically, interrelated factors of Southern California—were addressed. It is not simply the current understanding of the cause and scope of the oil spill Mr. Larson fully appreciates, but also the effects on the communities in which this crisis occurred. The same is true of Mr. Aitken. *See East Meets West Excursions, et al. v. Amplify Energy Corporation, et al.*, Case No. 8:21-cv-01725-DOC-JDE, Dkt. No. 1, Complaint. As Larson LLP and Aitken * Aitken * Cohn are comprised of lawyers who are intimately familiar with Southern California and, specifically, the Los Angeles and Orange County coastal areas, they are uniquely situated to appreciate the full extent of this complex matter and the businesses and residents that comprise the coastal communities.

Having offices situated amidst the communities impacted by the oil spill, Larson LLP and Aitken * Aitken * Cohn have the preexisting relationships, experience, and knowledge to serve the victims and to address the critical needs in this case. The ability to work with the Southern California agencies and involved parties will be crucial in this case. The following is but a fraction of the geographical components Mr. Larson's and Mr. Aitken's firms will be easily able to meet and/or work with: (i) Long Beach port authorities responsible for vessel traffic in the San Pedro Bay; (ii) crews and authorities from the coastal agencies that responded to the oil spill; (iii) Orange County District Attorney's Office that opened a criminal investigation into the oil spill; and, of course; (iv) the thousands of victims of the oil

spill. Beyond these components, Proposed Interim Co-Lead Class Counsel have further sought to understand and address the health, economic, and legal implications of the present crisis by directly speaking with affected residents and businesses, public health officers, physicians, public officials, and local journalists, to name a few. *See Friedman v. Guthy-Renker LLC*, No. 2:14-cv-06009-ODW (AGRx), 2016 WL 2758240, at *3 (C.D. Cal. May 12, 2016) (recognizing the investment of a "significant amount of time and resources" into claims weigh in plaintiffs' favor). This level of coordination, commitment to the public and affected communities' interests, and understanding of the multi-faceted implications of the oil spill support appointment of Mr. Larson and Mr. Aitken as Interim Co-Lead Class Counsel.

In addition to taking steps to ensure the community and those impacted by the oil spill understand the health, economic, and legal implications of the oil spill, Proposed Interim Co-Lead Class Counsel have taken concrete steps to ensure the preservation of evidence. *See Kamisake v. JP Morgan Chase Bank N.A.*, No. SACV 09-00918 JVS (RNBx), CV 09-6352 JVS (RNBx), 2011 WL 521338, at * 2 (C.D. Cal. Jan. 3, 2011) (noting "legal research" into relevant issues to be a factor). In particular, following extensive research into the risks associated with the preservation of evidence relating to the oil system at issue and the associated multi-agency and jurisdictional investigations, for example, steps were taken to initiate a comprehensive discussion with Defendants' counsel. This discussion is expected to result in a proposed stipulation between the parties or the filing of a motion and proposed order to ensure Plaintiffs' interests are protected.

### 2. Proposed Interim Co-Lead Class Counsel Have Significant Experience with Class Actions, Complex Litigation, Multi-Agency and Jurisdictional Matters, and Relevant Subject Matter

As courts evaluating the adequacy of the representation requirement at the class certification stage have repeatedly held, a class is fairly and adequately represented where counsel are qualified, experienced, and generally able to conduct

13

1  the litigation on the Class's behalf. *See, e.g., Brazil v. Dole Packaged Foods, LLC*,

2  No. 12-cv-01831 LHK, 2014 WL 2466559, at *10 (N.D. Cal. May 30, 2014); *Wolph*

3  *v. Acer Am. Corp.*, 272 F.R.D. 477, 487 (N.D. Cal. 2011); *Nat'l Fed'n of the Blind v.*

4  *Target Corp.*, 582 F. Supp. 2d 1185, 1202 (N.D. Cal. 2007); *In re TFT-LCD Antitrust*

5  *Litig.*, 267 F.R.D. 583, 594 (N.D. Cal. 2010); *In re NASDAQ Market-Makers*

6  *Antitrust Litig.*, 169 F.R.D. 493, 512 (S.D.N.Y. 1996) (class counsel satisfy adequacy

7  requirement where they are able to prosecute the action vigorously). Not just

8  litigation, but actual jury trial courtroom experience, are absolutely essential for lead

9  counsel. The ability to build and present this case for trial is the only leverage at

10  Plaintiffs' disposal to be able to convert the claims of the victims into adequate and

11  just compensation.

12      Of equal importance are the experience and temperament of lead counsel to

13  work constructively and effectively with opposing counsel and co-counsel, alike.

14  Qualities of temperament, while often overlooked, are absolutely critical to the

15  successful resolution of this litigation and should not be discounted when considering

16  the appointment of lead counsel.

17      As the following will demonstrate, the qualifications and experience of Mr.

18  Larson and Mr. Aitken to serve as Interim Co-Lead Class Counsel are beyond

19  reproach.

20        **a.**    **Stephen G. Larson of Larson LLP**

21      Mr. Larson spent nearly two decades as a federal public servant, working and

22  interacting with, gathering experience from, and understanding the Southern

23  California communities he served and where he continues to live and work.

24  Appointed by Attorney General William P. Barr, Mr. Larson served as an Assistant

25  United States Attorney in this very District for nine years. *See* Larson Decl. ¶ 4.

26  Upon obtaining substantial trial and appellate experience (including 24 jury trials and

27  49 appeals), state and federal inter-agency exposure, and a thorough understanding of

28  criminal and regulatory investigations—all of which will be crucial to the present

litigation—Mr. Larson was appointed to the federal bench. *See id.* ¶ 3. Mr. Larson first served in the capacity of a United States Magistrate Judge until his appointment as a United States District Judge in 2006. *See id.* As a federal judge, Mr. Larson adjudicated over a thousand cases, including multiple high-profile and complex matters. *See id.* Mr. Larson served by designation on the United States Court of Appeals for the Ninth Circuit on seven occasions, where he participated in approximately 40 decisions. *See id.* He also served on the Ninth Circuit Jury Instruction Committee responsible for formulating and revising the Ninth Circuit Model Jury Instructions. *Id.* In all, his nearly decade long experience as a federal judge provided him a unique understanding of the particular challenges, needs, and concerns of federal courts in counsel's management and conduct in complex legal matters, which understanding he has continued to develop while serving as Special Master and Discovery Master in numerous cases during the past decade, including the California State Court Opioid litigation (appointed by Judge Peter Wilson, Orange County Superior Court) and the JUUL Marketing MDL (appointed by Judge William Orrick, Northern District of California).

Following his nearly twenty-years of public service, Mr. Larson devoted the past twelve years to representing clients in complex litigation and related class matters. See *id.* ¶¶ 5-15. During his initial 18 months after departing the bench, he worked in a firm exclusively representing plaintiffs in class action lawsuits, many of which were MDLs. *See id.* ¶¶ 5-6. Thereafter, as a partner, executive committee member, and chair of a national law firm's litigation department, Mr. Larson managed over 100 lawyers in complex civil and criminal litigation. *Id.* ¶ 5. In 2016, Mr. Larson co-founded a litigation boutique in Los Angeles that has grown from 9 to 34 attorneys and includes offices in Orange County (Costa Mesa) and Washington, D.C. *Id.* Because Interim Co-Lead Class Counsel must necessarily oversee and ensure attorneys efficiently and effectively work on behalf of plaintiffs' interests, Mr. Larson's experience is particularly suited to represent the present Classes. Mr.

Larson's prior class action, mass tort, and complex litigation experience includes, but is not limited to, the following:

- Served as lead counsel in the matters of *State of Arizona v. Volkswagon AG, et al.*, No. CV2016-005112 (Ariz. Sup. Ct. for Maricopa County) and *State of Oklahoma v. Volkswagen AG et al.,* Case No. 16-cv-759 (W.D. Okla.), which involved violations of consumer protection laws in the "diesel dupe" scandal, a matter of environmental importance. Mr. Larson was able to negotiate a settlement on behalf of the Arizona Attorney General that resulted in Arizona being the first state to receive direct consumer restitution payments and payments to Arizona that were four times what it would have received under a previously negotiated multi-state settlement. *See id.* ¶ 8.

- Obtained a $65 million recovery from San Bernardino County for civil rights claims involving allegations of a retaliatory investigation and malicious prosecution, in *Colonies Partners LP v. County of San Bernardino,* 5:18-cv-00420. *See id.* ¶ 7.

- Obtained a settlement from an insurance company alleged to have underinsured dozens of homeowners whose properties burned during Northern California wildfires. Mr. Larson also represents 37 additional homeowners in an action against another insurance company who underinsured properties that were burned during Northern California wildfires. *See id.* ¶ 7 n.1.

- Served as trial counsel representing investors in a nation-wide securities class action against Snap Inc., which resulted in a $154 million settlement of all claims. *See id.* ¶ 7.

- Obtained a multimillion-dollar settlement for the Quapaw Nation and tribe members after 17 years of litigation before the U.S. Court of Federal

Claims, regarding claims that the federal government mismanaged tribal assets. *See id.* ¶ 9.

- Represented the relator in a *qui tam* civil Federal Tort Claims matter— *United States ex rel. Karin Berntsen v. Prime Healthcare Services, Inc., et al.,* Case No. 11-cv-08214 (C.D. Cal.) alleging healthcare fraud, resulting in a $65 million recovery from a regional healthcare provider. *See id.* ¶ 7.

- Secured a seven-figure judgment for an attorney in a fee dispute arising from the Indian Trust litigation and settlement, following a trial before the U.S. District Court for the District of Columbia. *See id.* at ¶ 9.

- Represented hundreds of victims in the *Southern California Gas Leak Cases*, which involved a massive, months-long leak from a natural gas storage facility located in northwest Los Angeles County. This case, too, involved complex environmental and liability issues, in which a $1.8 billion settlement was recently announced, resolving the claims of more than 35,000 plaintiffs. *See id.* ¶ 10.

Of geographic importance, Larson LLP is a 34-attorney firm, based in Los Angeles and Costa Mesa, California, with an additional office in Washington, D.C. Mr. Larson and colleagues Steven E. Bledsoe, Rick Richmond, Scott A. Sommer, and Paul A. Rigali, who are actively involved in the present action, offer over 100 years of complex litigation experience in and about Southern California communities. Mr. Larson, Mr. Bledsoe, Mr. Richmond, Mr. Sommer, and Mr. Rigali, collectively, have represented parties in complex international oil and gas disputes, environmental and water rights disputes, groundwater contamination litigation, real property matters, and contract disputes. *See id.* ¶¶ 11-15; *see In re Trader Joe's*, 2016 WL 7407329, at *2 (recognizing "firm's financial and experiential resources that it can offer"). The combined experience of these lawyers has resulted in numerous successful outcomes and hundreds of millions dollars to injured parties.

Mr. Larson and Larson LLP's attorneys have represented clients as plaintiffs and defendants in many of California's largest environmental and enforcement actions, which include, but are not limited to, experience with: (i) Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA" or "Superfund") enforcement, cost recovery, and clean up actions; (ii) Clean Water Act; (iii) Clean Air Act; (iv) Waters of the United States ("WOTUS") rule; and (v) California Environmental Quality Act ("CEQA"). *See id.* ¶ 12. These efforts have included:

- Representation of the Orange County Water District ("OCWD") in its efforts to mediate two plumes of groundwater contamination at the North Basin Groundwater Cleanup site. As part of the remediation efforts and investigation, OCWD and the Environmental Protection Agency successfully achieved the site's status on the National Priorities List in 2020. *See id.* ¶ 13.

- Representation of the City of Rialto in litigation and regulatory efforts to remediate groundwater at a 160-acre site. The site, which was used to process bombs and ammunition during World War II, and later, to manufacture explosives and fireworks, was contaminated with perchlorate and various other contaminants. *See id.* ¶ 14.

- Representation of a municipal water agency where a private water company illegally pumped more than $50 million worth of groundwater from an adjacent basin. *See id.* ¶ 15.

Mr. Larson and Larson LLP are uniquely suited, given the extensive experience discussed herein, to handle the complex, multi-agency and jurisdictional environmental disaster litigation pending before this Court and to serve as Interim Co-Lead Class Counsel. *See Kamisake*, 2011 WL 521338, at * 2 (noting "impressive list of accomplishments and experience"). Furthermore, Mr. Larson is committed to effectively utilizing and managing the vast expertise and resources of the firms that

18

1   are counsel of record in the related actions to efficiently, but even more importantly,

2   effectively and zealously conduct this litigation in the interests of the Southern

3   California victims of this environmental disaster.

4           **b.**    <u>**Wylie A. Aitken of Aitken * Aitken * Cohn**</u>

5       Mr. Aitken and the law firm Aitken * Aitken * Cohn, headquartered in Santa

6   Ana, California, for more than 40 years, have decades of experience with class

7   actions and mass tort litigation. As the Court is already aware, Mr. Aitken and his

8   firm have been lead trial counsel in numerous areas of complex litigation, from

9   products liability and business torts to class actions and MDLs. *See Banzai Surf Co.*,

10  Case No. 8:21-CV-01669-DOC-JDE, (Dkt. No. 15, at 16.) Aitken * Aitken * Cohn

11  possesses the experience, expertise, and skill set to vigorously and effectively

12  manage the proposed Classes and prosecute the present environmental litigation. Mr.

13  Aitken and Aitken * Aitken * Cohn's experience are set forth in *Banzai Surf Co.*'s

14  moving papers. *See id*. at 16-17, 38-43.

15      Plaintiff acknowledges the somewhat unorthodox step of nominating for a co-

16  lead position an attorney who has already submitted a leadership application in

17  support of a different leadership structure and supporting different firms to fill that

18  structure, and who has not had any involvement in the instant motion. But orthodoxy

19  should never be an impediment to the appointment of a leadership structure that will

20  be in the very best interests of the Southern California victims of this environmental

21  disaster, and Plaintiff submits that the two attorneys that are the best suited to lead

22  this litigation are Mr. Larson and Mr. Aitken.

23      **3.**    **Larson LLP and Aitken * Aitken * Cohn Individually, and**

24          **Collectively, Bring More Than Sufficient Resources and Time to**

25          **Effectively Prosecute This Action**

26      In addition to the substantial relevant complex litigation experience, expertise,

27  and skill set, Mr. Larson and Mr. Aitken possess more than sufficient resources and

28  time to zealously prosecute the present matters. As both Larson LLP and Aitken *

19

PLAINTIFF'S MOTION FOR APPOINTMENT OF INTERIM CLASS COUNSEL, PURSUANT TO FED.
R. CIV. P. 23(G); CASE NO. 8:21-CV-01714-DOC-JDE

Aitken * Cohn are firms with a substantial Southern California presence—Costa Mesa, San Clemente, Santa Ana, and Los Angeles—the ability to work directly, efficiently, and effectively with all involved is without question. In addition to being able to dedicate human resources, both firms are able to devote the necessary financial resources to successfully see the present litigation through to trial, and whatever may come thereafter. *Cooperman*, 2011 WL 13227858, at * 2 (recognizing the commitment of "multiple lawyers" and devotion of "all necessary resources" during litigation stages to be important). Larson LLP's and Aitken * Aitken * Cohn's commitment of human and financial resources, coupled with their understanding and dedication of the time needed to prosecute the present litigation, make each well suited to serve as Interim Co-Lead Class Counsel. *See In re Ring LLC Privacy Litigation*, No. CV 19-10899-MWF (RAOx), 2020 WL 9763065, at *2 (C.D. Cal. Nov. 13, 2020) (noting that all proposed interim counsel have experience, but that Rule 23(g) permits a court to "appoint its own 'slate' ").

## IV     CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that this Court issue an order appointing Stephen G. Larson and Wylie A. Aitken as Interim Co-Lead Class Counsel in the manner proposed by this Motion.


Dated: November 4, 2021                    Respectfully submitted,

                                           LARSON LLP


                                           By:/s/ Stephen G. Larson
                                                Stephen G. Larson
                                                Steven E. Bledsoe
                                                Rick Richmond
                                                Paul A. Rigali

PLAINTIFF'S MOTION FOR APPOINTMENT OF INTERIM CLASS COUNSEL, PURSUANT TO FED. R. CIV. P. 23(G); CASE NO. 8:21-CV-01714-DOC-JDE