Christopher W. Keegan (SBN 232045)
chris.keegan@kirkland.com
KIRKLAND & ELLIS LLP
555 California St., Suite 2900
San Francisco, CA 94104
Telephone: (415) 439-1400
Facsimile: (415) 439-1500

*Counsel for Defendants
Amplify Energy Corp.,
Beta Operating Company, LLC, and
San Pedro Bay Pipeline Company*

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### SOUTHERN DIVISION

| | |
|---|---|
| BEYOND BUSINESS INCORPORATED, d/b/a BIG FISH BAIT & TACKLE, individually and on behalf of others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>AMPLIFY ENERGY CORPORATION; a Delaware Corporation; BETA OPERATING COMPANY, LLC, d/b/a BETA OFFSHORE, a Delaware Limited Liability Company; and SAN PEDRO BAY PIPELINE COMPANY, a California Company,<br><br>Defendants. | CASE NO. 8:21-cv-01714-DOC-JDE<br><br>**DEFENDANTS' RESPONSE TO PLAINTIFF'S *EX PARTE* APPLICATION FOR COURT ORDER REQUIRING DEFENDANTS TO PROVIDE NOTICE BEFORE TAKING ANY ACTION THAT COULD POTENTIALLY SPOLIATE EVIDENCE**<br><br>Judge:      Hon. David O. Carter |

## I. INTRODUCTION

Plaintiff Beyond Business seeks unnecessary emergency relief despite Defendants' prior agreement to provide advance notice to all Plaintiffs' counsel in these related actions of any repairs or replacement of the San Pedro Bay Pipeline. The parties are due to further discuss evidence preservation issues (and other items required by the Federal Rules and this Court's orders) this Friday, November 12, during the continuation of the parties' Rule 26(f) meet and confers. Rather than work with the other Plaintiffs' counsel and defense counsel to memorialize their agreements into the joint Rule 26(f) report, counsel for Beyond Business filed this emergency application.

This Court's standing order is clear: "*Ex parte* applications are solely for extraordinary relief and should be used with discretion." ECF No. 13 at 3. This application is neither necessary nor is the requested relief tailored to address Beyond Business's purported concern. Beyond Business's application should be denied and the parties should be directed to memorialize their commitments and positions on evidence preservation issues in their Rule 26(f) report, as mandated by the Federal Rules of Civil Procedure and the Local Rules. If the Court finds an order appropriate, Defendants submit alongside this response a proposed order to memorialize Defendants' agreement to provide Plaintiffs with notice before they undertake any government-approved repairs or replacements.

## II. BACKGROUND

### A. Factual Background.

Defendants are subject to multiple lawsuits and government investigations relating to an oil discharge discovered off the coast of Southern California in October 2021. To date, fourteen related cases have been filed, all of which have been assigned or transferred to this Court. "The management of these cases presents unique challenges," and "[c]ounsel, the parties, and the Court will need to work collaboratively" to resolve them. *Gutierrez Jr. et al. v. Amplify Energy Corp. et al.*, No. SA CV 21-CV-1628-DOC-JDE, ECF No. 25 at 1. This Court has set an initial

scheduling conference "to hear respective counsel's input concerning the appointment of interim lead class counsel and their views on a coordination plan," with an aim to "establish early and continuing control" that will, among other things, "discourage wasteful pretrial activities." *Id.* at 3.

Defendant Beta Offshore is a member of the "Unified Command" "that is charged with responding to an investigation into the oil spill." ECF No. 22-1 at 3. Unified Command was established on October 3, 2021, and includes the Coast Guard and the California Department of Fish and Wildlife's Office of Spill Prevention and Response. Supporting agencies are the cities of Long Beach, Newport Beach, Huntington Beach, and the Orange County Sheriff's Department.[1]

As explained in more detail in the accompanying *Declaration of Richard P. Smiley*, and as previously explained to all Plaintiffs' counsel, including Beyond Business's, the pipeline remains on the seafloor. Decl. ¶ 5. The pipeline will remain on the seafloor until the Pipeline and Hazardous Materials Safety Administration ("PHMSA") approves a repair plan to ensure the pipeline is made safe. *Id*. Defendants are working with metallurgists and engineers to prepare a repair plan to submit for government review and approval. *Id*. No repair work will be done until repair plans have been submitted and approved by PHMSA. *Id*.

The post-spill process further detailed in the Smiley Declaration has been at the direction of and in coordination with state and federal authorities. *Id*. ¶ 6. Since approximately October 24, 2021, divers working with Unified Command have been inspecting the pipeline under direction from PHMSA and the federal Bureau of Safety and Environmental Enforcement ("BSEE"). *Id*. The pipeline inspections were a necessary first step in developing a government-approved repair plan. *Id*. ¶ 7. To conduct each of the tests that must be performed to complete the PHMSA- and

---

[1] "*Newport Beach Oil Spill Response (Initial Unified Command Release)*", Southern California Spill Response (Oct. 3, 2021), *accessible at* https://socalspillresponse.com/newport-beach-oil-spill-response-initial-unified-command-release/.

BSEE-ordered inspection, the pipeline must be cleaned of any marine growth. *Id.* ¶ 14. Defendants are not aware of anything being removed from the pipeline (other than marine growth) during the cleaning and inspection work. *Id.*

### B.  Meet-And-Confer Process.

Defendants have hosted three, joint meet-and-confer calls with counsel for all the Plaintiffs on many issues, including preservation of evidence and the chain of custody of the pipeline once it is removed from the ocean floor. These calls occurred October 19, October 28, and November 5. The parties will speak again this Friday, November 12.

On the October 19 meet-and-confer, Defendants told Plaintiffs that Defendants would keep Plaintiffs updated about any government-approved removal of the pipeline. Plaintiffs raised additional concerns about the preservation of the pipeline on the October 28 meet-and-confer. Defendants agreed to circulate a proposed agreement to all Plaintiffs' counsel and previewed their willingness to notify Plaintiffs before the removal or repair of the pipeline.

In the meantime, and before receiving Defendants' proposed language, Beyond Business (without including other Plaintiffs' counsel) told Defendants on October 27, 2021 that it was considering filing an *ex parte* application. ECF No. 22-3, Ex. 2. On November 1, 2021, counsel for Beyond Business agreed to hold off filing while the parties negotiated.

The same day, Defendants e-mailed all Plaintiffs' counsel with proposed language for a stipulation: "Defendants agree to provide counsel to Plaintiffs advance notice of any repairs or replacement of the San Pedro Bay Pipeline." ECF No. 22-3, Ex. 12. Defendants said they hoped to address any concerns about preservation of the pipeline "in a coordinated fashion," and let Plaintiffs know they would propose times for a Rule 26(f) conference with all Plaintiffs. *Id.* The first occurred last Friday, November 5; the second is scheduled for this Friday, November 12.

On November 5, the parties discussed formalizing an agreement by stipulation

about Defendants' preservation of the pipeline and related notice. Counsel for one Plaintiff offered to circulate a proposed stipulation responding to Defendants' November 1 proposal. Despite being on the meet-and-confer call, Beyond Business's counsel did not discuss, much less object to, Defendants' proposed stipulation or that process.

Later on November 5, Defendants updated Plaintiffs about the repair of the pipeline. ECF No. 22-3, Ex. 13. In response to that update, on November 5, counsel for Davey's Locker Sportfishing, Inc. sent a list of eight questions about the work done to date to inspect the pipeline and sought a response by the close of business on Monday, November 8. Before Defendants could respond to those questions by the stated deadline, Beyond Business filed its *ex parte* application.

## III.  LEGAL STANDARD

*Ex parte* applications "are rarely justified." *Mission Power Eng'g Co. v. Cont'l Cas. Co.*, 883 F. Supp. 488, 490 (C.D. Cal. 1995). Like this one, they "are nearly always improper" because they "contravene the structure and spirit of the Federal Rules of Civil Procedure and the Local Rules." *In re Intermagnetics Am., Inc.*, 101 B.R. 191, 192-93 (C.D. Cal. 1989); *see Jacobson v. Pac. Asian Enters., Inc.*, 2019 WL 9047075, at *1 (C.D. Cal. Dec. 10, 2019); Initial Standing Order, ECF No. 13 at 3:26-27 ("Ex parte applications are solely for extraordinary relief and should be used with discretion.").

## IV.  ARGUMENT

### A.  Defendants Already Agreed To Provide Advance Notice Of Repairs Or Replacement Of The Pipeline.

Defendants have already agreed to advance notification, and did so before Plaintiff's application to this Court for relief. In light of Defendants' agreement, Plaintiff's application is both premature and moot. As explained, and undisputed, Defendants agreed to enter into a stipulation to provide Plaintiffs' counsel with notice of any repairs or replacements of the San Pedro Bay Pipeline. That offer ensures that Beyond Business will be provided with notice before any repair work on the pipeline.

To date, Beyond Business has not raised any concerns with Defendants' proposal, and there are none. The pipeline is on the ocean floor and will remain there for the foreseeable future. No repairs have been scheduled yet, and Defendants need to both submit a proposed repair plan and secure external governmental approval to conduct any repairs. Defendants have repeatedly agreed to notify all Plaintiffs' counsel before they conduct those repairs, and thus Beyond Business already has the relief it seeks. Beyond Business cannot prove any harm justifying a preservation order, let alone "irreparable prejudice" warranting extraordinary *ex parte* relief. *Mission Power*, 883 F. Supp. at 492.

### B. Beyond Business Does Not Present An Emergency Warranting Exceptional Relief.

To justify "bypassing the regular noticed motion procedure," Beyond Business must show that it will be "irreparably prejudiced if the underlying motion is heard according to regular noticed motion procedures." *Id.* In other words, Beyond Business "must show why [it] should be allowed to go to the head of the line in front of all other litigants and receive special treatment." *Id.*

Beyond Business has essentially asked the Court to intervene in an ongoing meet-and-confer process based on an unsubstantiated fear of spoliation. That request is insufficient as a matter of law and belied by the facts.

*First*, Beyond Business's stated concern is "that Defendants may not even know . . . that their actions may and/or will compromise critical evidence." ECF No. 22-1 at 12. That generalized concern is no more than "mere speculation about Defendants' potential for evidence destruction," which courts have held "by itself, does not demonstrate that Plaintiff will suffer 'irreparable prejudice' in its prosecution of this case if the requested [*ex parte*] relief is not granted." *See, e.g.*, *Bangkok Broad. & T.V. Co., Ltd. v. IPTV Corp.*, 2009 WL 10670411, at *3 (C.D. Cal. July 8, 2009) (denying *ex parte* application when the assertion that evidence might be destroyed was "based entirely on vague assertions of misconduct" and there was no showing that the

comparable evidence was unavailable from other sources). Even under the more lenient standards governing ordinary motions for evidence preservation, courts routinely decline to impose additional obligations on parties without evidence of prior discovery malfeasance.[2] Indeed, Beyond Business admits that federal and state investigations are ongoing with respect to the pipeline. Beyond Business has not shown it meets the standard for preservation-related relief under traditional rules. And so it has not demonstrated a need for emergency relief.

Beyond Business's cited authorities favor denying relief. In *T-Mobile USA, Inc. v. All Pro Distrib. Inc.*, 2008 WL 11339967, at *2 (C.D. Cal. Apr. 30, 2008), the *only* case cited by Beyond Business that discusses an *ex parte* application for a preservation-related order, the Court denied relief, finding that the movant had not demonstrated irreparable injury. So too here. And in *United States v. Kitsap Physicians Serv.*, 314 F.3d 995 (9th Cir. 2002), the Ninth Circuit held that Defendants *did not* engage in spoliation of evidence when they deleted documents in compliance with a document retention policy and applicable state regulations. Similarly, in *Akiona v. United States*, 938 F.2d 158 (9th Cir. 1991), the Ninth Circuit held that the plaintiffs failed to show any bad faith in destruction of records. Beyond Business's remaining authorities on this point are also distinguishable or irrelevant.[3]

---

[2] *See, e.g., Lopez v. Cate*, 2014 WL 3615480, at *2 (E.D. Cal. July 21, 2014), report and recommendation adopted, 2014 WL 4472685 (E.D. Cal. Sept. 11, 2014) ("Th[e] duty to preserve evidence, backed by the court's inherent power to impose sanctions for the destruction of such evidence, is sufficient in most cases to secure the preservation of relevant evidence.") (internal marks omitted); *Young v. Facebook, Inc.*, 2010 WL 3564847, at *1 (N.D. Cal. Sept. 13, 2010) ("Plaintiff does not demonstrate why extraordinary preservation requirements are necessary to prevent the destruction of relevant evidence in the instant case.").

[3] *See West v. Goodyear Tire & Rubber Co.*, 167 F.3d 776 (2d Cir. 1999) (involving a mechanic that was injured mounting a wheel and sued, but deflated the subject-wheel); *Wm. T. Thompson Co. v. General Nutrition Corp.*, 593 F. Supp. 1443 (C.D. Cal. 1984) (ordering default judgment and monetary sanctions against party in false advertising litigation that destroyed documents, records, and invoices); *Silvestri v. General Motors Corp.*, 271 F.3d 583 (4th Cir. 2001) (affirming dismissal of products liability lawsuit where plaintiff alleged faulty airbag caused his car crash, filed suit three years after the crash, but failed to preserve the car, which was sold to a refurbisher, repaired, and resold); *Innis Arden Golf Club v. Pitney Bowes, Inc.*, 257 F.R.D. 334 (D. Conn. 2009)

***Second***, Plaintiffs also contend that "the nature and complexity of the cause of and response to the oil spill" justifies emergency judicial relief. ECF No. 22-4 at 2; ECF No. 22-1 at 12. Exactly the opposite. Defendants are complying with a complex regulatory scheme created by local, state, and federal governments to respond to exactly this type of event. Those complex requirements reflect the legislative and regulatory balance of varied interests reached by the applicable governmental bodies and agencies. Judicial intervention disrupting that scheme should be a last resort, not a first step. And if Beyond Business has a legitimate concern about the actions requested by the government agencies at play, that issue can be resolved through normal motions practice and briefing *after* the parties have met and conferred.

***Third***, Beyond Business has not fulfilled its meet-and-confer obligations related to this application, and so any relief is premature—*ex parte* relief doubly so. As Beyond Business's *own cited authority* admits, "[t]he inappropriateness of *ex parte* relief in this case is exacerbated by the parties' disagreements over the scope of discovery and proposed relief . . . it is apparent from the papers that the parties have not had an opportunity to meet and confer in a good faith effort to resolve their disputes." *T-Mobile USA, Inc. v. All Pro Distrib. Inc.*, 2008 WL 11339967, at *2 (C.D. Cal. Apr. 30, 2008)*; see also* L.R. 7–3 "Conference of Counsel Prior to Filing of Motions"; L.R. 37–1 "*Prefiling* Conference of Counsel"; *Wright v. Old Gringo et al.*, 2019 WL 5485517, at *3 (S.D. Cal. Oct. 25, 2019) ("Because this is a dispute that could conceivably be resolved, or at least narrowed, by the parties, and because opposing counsel has

---

(imposing sanction where property owner hired environmental consulting firm that disposed of soil samples from its property and related data and documents); *Cyntegra, Inc. v. Idexx Labs., Inc.*, 2007 WL 5193736 (C.D. Cal. Sept. 21, 2007) (granting motion for sanctions in unfair competition litigation where "Plaintiff stored a majority of its documents on third-party servers run by [a third party] and failed to make payment to maintain the service . . . [the third party] cleared its servers of Plaintiff's documents at an unknown date soon afterwards. Plaintiff did not backup the information or take any affirmative action to save the files"); *Ameripride Scvs., Inc. v. Valley Indus. Serv., Inc.*, 2006 WL 2308442, at *5 (E.D. Cal. Aug. 9, 2006) (imposing sanctions in case involving migration of contaminated groundwater from an industrial laundry facility where "110 tons of soil and two pieces of pipe were removed from the [Defendant's] facility and discarded").

indicated a willingness to participate in that process" "an *ex parte* motion [is] inappropriate."). The same applies here, and Beyond Business is not entitled to judicial intervention when the parties can effectively resolve any purported dispute outside of court.

If Beyond Business has valid concerns that require further discussion, none of which have been raised to date, they can raise them through the normal meet-and-confer and Rule 26(f) processes with *all* interested litigation participants. Discussion of "issues about preserving discoverable information" is required under Federal Rule of Civil Procedure 26(f), and the parties have already discussed these matters during the first portion of their Rule 26(f) conference on November 5. The parties will speak again on November 12, and if the parties have outstanding disputes, the Court can address those concerns at the December 15, 2021 Rule 26(f) hearing.

### C. Beyond Business's Requested Relief Is Vague And Unworkable.

It also bears emphasis that Beyond Business's emergency application seeks undefined relief so vague that it cannot be complied with. Its application and proposed order provide no detail about what actions Beyond Business wants notification of, what it considers evidence, what it considers "spoliation," or any other controlling principle that could guide compliance by Defendants and enforcement by this Court. Instead, the proposed order demands notification from Defendants for all actions "that could possibly lead to the spoliation of evidence." ECF No. 22-4 at 3. In its memorandum in support, Beyond Business similarly describes its requested relief as "seek[ing] the opportunity to be heard" before any activity that "may" alter or spoil evidence. ECF No 22-1 at 11–12. The far-reaching and non-administrable requested relief is unsurprising given Beyond Business's admission that it does not understand the process of assessing and repairing the pipeline. *Id.* at 10–11 (describing "complexity (and potential confusion)" of the repair and investigation process). The requested relief is unnecessary and impermissibly vague. For that reason alone, the application must also be denied. *See Acosta v. Heritage*, 332 F.R.D. 347, 349 (D. Haw. 2019) (declining to

enter proposed protective order that was "overly broad"). As a direct result of this ambiguity, and for the reasons explained above, Plaintiff's requested relief also threatens to impose a substantial burden on Defendants and disrupt its efforts to, under the direction and guidance of various regulatory agencies, submit a plan to repair the pipeline.

Defendants believe no order is appropriate stemming from this application. If the Court is inclined to issue an order, however, Defendants' proposed order outlines specific circumstances under which they will notify Plaintiffs. As Defendants' proposed order details, Defendants agree to notify Plaintiffs of key events in the repair and replacement of the pipeline. Unlike Beyond Business's order, Defendants' order lays out with clarity the triggering actions, providing all parties, and the Court, with clear guidance and a predictable and administrable set of obligations. Defendants agree to inform Plaintiffs when they submit repair plains to PHMSA and when they receive approval. Further, Defendants' order includes guidelines about the appropriate timeline for notification—within one business day of PHMSA requests and/or approvals, and "advance notice before" approved repair or replacement actions. Last, Defendants' proposal specifies that Defendants will provide Plaintiffs "[t]he identity of the party or entity who will maintain the portion of the Pipeline that is replaced." Defendants' proposed order thus clearly outlines Defendants' obligations with the specificity absent from Beyond Business's requested relief.

And Defendants' proposed order marries Plaintiffs' desire for open communication with the need to respond promptly to the federal and state agencies conducting investigations into, and overseeing repair and maintenance of, the pipeline. As explained to Beyond Business, to all Plaintiffs, and in this response, no repair can be done before PHMSA approves a repair plan (which has not been yet been submitted). Recognizing that reality is essential to crafting specific relief that works for all parties. Defendants have done so. Beyond Business has not even tried to.

## V.    CONCLUSION

Beyond Business's requested relief should be denied. To the extent the Court desires to enter an order memorializing Defendants' commitment about notification, Defendants submit the attached proposed order for review. Any other details about the preservation of evidence should be addressed through the Rule 26(f) meet-and-confer process.

DATED: November 9, 2021

Respectfully submitted,

/s/ Christopher W. Keegan
Christopher W. Keegan (SBN 232045)
chris.keegan@kirkland.com
KIRKLAND & ELLIS LLP
555 California St., Suite 2900
San Francisco, CA 94104
Telephone: (415) 439-1400
Facsimile: (415) 439-1500

*Counsel for Defendants
Amplify Energy Corp.,
Beta Operating Company, LLC, and
San Pedro Bay Pipeline Company*