Stephen G. Larson, State Bar No. 145225
*slarson@larsonllp.com*
Steven E. Bledsoe, State Bar No. 157811
*sbledsoe@larsonllp.com*
Rick Richmond, State Bar No. 194962
*rrichmond@larsonllp.com*
Paul A. Rigali, State Bar No. 262948
*prigali@larsonllp.com*
**LARSON LLP**
555 Flower Street, Suite 4400
Los Angeles, CA 90071
Telephone: (213) 436-4888
Facsimile: (213) 623-2000

Richard D. McCune, State Bar No. 132124
*rdm@mccunewright.com*
David C. Wright, State Bar No. 177468
*dcw@mccunewright.com*
James G. Perry, State Bar No. 281356
*jgp@mccunewright.com*
**MCCUNE WRIGHT AREVALO, LLP**
18565 Jamboree Road, Suite 550
Irvine, CA 92612
Telephone: (909) 557-1250
Facsimile: (909) 557-1275

*Attorneys for Plaintiff and the Proposed Class*

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

## SOUTHERN DIVISION

| | |
|---|---|
| BEYOND BUSINESS INCORPORATED, d/b/a BIG FISH BAIT & TACKLE, et al.<br><br>            Plaintiff,<br><br>vs.<br><br>AMPLIFY ENERGY COMPANY, LLC d/b/a BETA OFFSHORE, et al.,<br><br>            Defendants. | Case No. 8:21-cv-01714-DOC-JDE<br>Judge:  Hon. David O. Carter<br><br>**PRELIMINARY REPORT FOR INITIAL SCHEDULING CONFERENCE**<br><br>[Filed concurrently with Declaration of Stephen G. Larson]<br><br>Scheduling Conf.:  December 15, 2021<br>Time:  9:00 a.m.<br>Crtrm:  9D |

Stephen G. Larson and Steven E. Bledsoe of Larson LLP will appear before the Court on December 15, 2021 on behalf of Plaintiff Beyond Business Incorporated d/b/a Big Fish Bait & Tackle to present (1) the reasons why Stephen G. Larson of Larson LLP should be appointed as Interim Co-Lead Class Counsel with Wiley A. Aitken of Aitken, Aitken, Cohn ("AAC"), (2) Larson LLP's recommendation that all cases arising from the San Pedro Bay Pipeline Oil Spill be consolidated before this Court, and (3) its proposal for a coordinated litigation plan.

## I.    Why Stephen G. Larson of Larson LLP and Wylie A Aitken of AAC Should Be Appointed Interim Co-Lead Class Counsel

Plaintiff respectfully requests that the Court enter an order appointing Stephen G. Larson of Larson LLP and Wylie A. Aitken of AAC as Interim Co-Lead Class Counsel.[1] *See* Fed. R. Civ. Proc. 23(g)(3) ("The court may designate interim counsel to act on behalf of a putative class before determining whether to certify the action as a class action."). With Mr. Larson and Mr. Aitken at the helm, this matter can move forward efficiently, fairly and expeditiously, without wasteful and needless pretrial activities that will congest the Court's docket and delay consideration of the merits. *See* Fed. R. Civ. Proc. 16(a) (pretrial conferences shall focus on mechanisms to expedite disposition of the action, establish early and continuing control and effective management of the matter, discourage wasteful pretrial activities, improve the quality of the legal advocacy, and facilitate settlement). Furthermore, a lean two-attorney leadership structure is the most effective way to avoid the inefficiencies and significant duplication of efforts that often result from an expanded leadership structure. *See* Advisory Committee Note to Fed. R. Civ. P. 23 ("[T]he court should be alert to the need for adequate staffing of the case, but also to the risk of

---

[1] Plaintiff previously submitted a Motion for Appointment of Interim Co-Lead Class Counsel, Pursuant to Fed. R. Civ. Proc. 23(g), and Support for Motion to Consolidate (Dkt. No. 19). In that motion, Plaintiff set forth why it believed Stephen G. Larson and Wiley A. Aitken should be appointed as Interim Co-Lead Class Counsel. This filing further discusses why the foregoing leadership structure will benefit the putative class.

overstaffing or an ungainly counsel structure."); *see also See Four In One Co., Inc. v. SK Foods, L.P.*, Case No. 2:08-cv-03017-MCE-EFB, 2009 WL 747160, at * 3 (E.D. Cal. Mar. 20, 2009) ("The Court nonetheless believes that the appointment of more than two co-lead counsel, and anything other than a single liaison counsel, would engender duplication of effort not in the best interest of either a focused or efficient class representation.").

Mr. Larson's and Mr. Aitken's experience, and that of their partners assigned to this matter, in conjunction with their deep-rooted connection to the communities affected by the San Pedro Bay Pipeline Oil Spill, will ensure that the putative class receives zealous and effective advocacy and that this matter will proceed with diligence to disposition.  This leadership structure will allow for the assignment of work to the many accomplished lawyers and strong firms currently representing Plaintiffs in the consolidated cases in such a way as to maximize efficiency and avoid disputes between firms that can sometimes arise during this type of litigation. Because the very waters and shores that the putative class relies upon for their financial, physical, and mental well-being have been and continue to be harmed by Defendants' discharge, delay occasioned by duplicative and unnecessary pre-trial activities, lack of cooperation and coordination between counsel, lack of resources, and disjointed advocacy should be avoided.  *See Grewal v. Jammu*, 191 Cal. App. 4th 977, 999 (2011) ("A well-known saying, generally attributable to William Gladstone, is that 'Justice delayed is justice denied.'").  The putative class expects and deserves prompt relief from the harm caused by Defendants' conduct.  Mr. Larson and Mr. Aitken are highly skilled advocates who are prepared to deliver prompt justice for the putative class by imposing a leadership structure that will effectively manage and streamline resolution of this complex, multi-faceted dispute.

Accordingly, as set forth in greater detail below, Plaintiff submits that Mr. Larson of Larson LLP and Mr. Aitken of AAC provide an unparalleled combination of talent, expertise, and resources, in addition to their understanding of and

relationships with the affected communities, to shepherd this matter to a fair and prompt resolution for the benefit of the putative class.

**A.** **Longstanding Connection to Orange and Los Angeles Counties**

1.   Stephen G. Larson

Mr. Larson has spent his entire legal career in Southern California. He is (1) a graduate of the University of Southern California Gould School of Law, (2) a former Assistant United States Attorney for the Central District of California, (3) a former United States Magistrate Judge for the Central District of California, (4) a former United States District Judge for the Central District of California, and (5) the former Los-Angeles-based chair of a national law firm's litigation department. *See* Declaration of Stephen G. Larson in Support of Preliminary Report for Initial Scheduling Conference ("Larson Decl."), at ¶¶ 3-5.

When Mr. Larson decided to open his own law firm in January 2016, he located its headquarters in Los Angeles, and soon thereafter, opened an office in Orange County.[2] *See* Larson Decl., at ¶ 11. Mr. Larson's reasons for a Los Angeles and Orange County office are legion. Larson LLP serves as trusted legal advisors and litigators for a host of businesses, individuals, and political representatives residing in and doing business in both counties. Larson LLP has also served as counsel for Los Angeles County and Orange County in a variety of legal matters. *Id*. Moreover, Mr. Larson is a resident of both counties, and thus, frequently visits the counties' coastal businesses, including professional, hospitality, and recreational services—the very businesses forming the putative class. *Id*. Accordingly, Mr. Larson has his finger on the pulse of communities affected by the San Pedro Bay Pipeline Oil Spill. Indeed, he has participated in the civic discourse and community outreach efforts that have ensued after Defendants' discharge. *Id.*

---

[2] Larson LLP also has an office in Washington, D.C., enabling Larson LLP's litigators to work "on the ground" with the Federal agencies often called to duty after oil discharges into waters of the United States and similar mass catastrophic events.

1   Moreover, because Mr. Larson works in Larson LLP's Los Angeles and

2   Orange County offices, the (i) Long Beach port authorities responsible for vessel

3   traffic in the San Pedro Bay; (ii) crews and authorities from the coastal agencies that

4   responded to the oil spill; (iii) the Orange County District Attorney's Office that

5   opened a criminal investigation into the oil spill; and, of course; (iv) the thousands of

6   victims of the oil spill, are easily accessible on a daily basis, thereby enabling Mr.

7   Larson to work with the foregoing entities and people on a moment's notice, if need

8   be, to ensure the interests of the putative class are advanced. *Id.*

9                     2.   Wylie A. Aitken

10   Mr. Aitken's firm has been headquartered in Santa Ana, California for more

11   than 40 years. *See Banzai Surf Co.*, Case No. 8:21-CV-01669-DOC-JDE, Dkt. No.

12   15-3, at 5. Mr. Aitken's office, like Larson LLP's Orange County office, is near in

13   proximity to the oil spill and the affected residents and businesses; accordingly, Mr.

14   Aitken has been present in the community to address the community's concerns

15   stemming from the oil spill. *Id.*

16   Mr. Aitken's reputation and influence in the Orange County community is well

17   recognized. He is one of "Orange County's Most Influential Leaders" (Orange

18   County Business Journal); he won the "Franklin G. West Award" from the Orange

19   County Bar Association; he is the Chair of the Board of Advisors of Chapman

20   University Law School; and the Chair of the Chapman University Board of Trustees.

21   *Id.* at 5. Furthermore, of particular relevance to the issues before this Court, Mr.

22   Aitken has been actively involved with the Crystal Cove Conservancy and the Ocean

23   Institute—organizations devoted to the preservation and conservation of the very

24   waters impacted by Defendants' discharge. *Id.*

25         *      *      *

26   The collective reputation and influence of Mr. Larson and Mr. Aitken in Los

27   Angeles County and Orange County, combined with their genuine, lifetime-

28   connectedness to the communities affected by this environmental disaster gives

- 4 -

PRELIMINARY REPORT FOR INITIAL SCHEDULING CONFERENCE

Plaintiff and the putative class confidence that their interests will be knowledgeably and passionately represented.

### B. Knowledge of Applicable Law and Procedures

#### 1. Stephen G. Larson

For nearly two decades, Mr. Larson practiced law pursuant to and adjudicated matters in accordance with the Federal Rules of Civil Procedure.  Appointed by Attorney General William P. Barr in 1991, Mr. Larson served as an Assistant United States Attorney in this very District for nine years.  *See* Larson Decl. ¶ 4.  Upon obtaining substantial trial and appellate experience (including 24 jury trials and 49 appeals), state and federal inter-agency exposure, and a thorough understanding of criminal and regulatory investigations—all of which will be crucial to the present litigation—Mr. Larson was appointed to the federal bench.  *See id*. ¶¶ 3-4.  Mr. Larson first served in the capacity of a United States Magistrate Judge until his appointment as a United States District Judge in 2006.  *See id.* ¶ 3.  As a federal judge, Mr. Larson adjudicated over a thousand cases, including multiple high-profile and complex matters pursuant to the very rules and procedures that will govern resolution of this dispute.[3]  *See id.*

In all, his nearly decade long experience as a federal judge provided him a unique understanding of the particular challenges, needs, and concerns of federal courts in counsel's management and conduct in complex legal matters, which understanding he has continued to develop while serving as a Special Master and Discovery Referee in numerous cases that have been designed "complex" during the past decade, including the California State Court Opioid litigation (appointed by

---

[3] Mr. Larson also served by designation on the United States Court of Appeals for the Ninth Circuit on seven occasions, where he participated in approximately 40 decisions, furthering his knowledge and expertise of the rules and procedures applicable to this Court, and the Ninth Circuit Court of Appeals.  *See id.*  He also served on the Ninth Circuit Jury Instruction Committee responsible for formulating and revising the Ninth Circuit Model Jury Instructions.  *Id.*

Judge Peter Wilson, Orange County Superior Court) and the JUUL Marketing MDL (appointed by Judge William Orrick, Northern District of California). *See id.*

In addition to his familiarity with the Federal Rules of Civil Procedure, the Manual for Complex Litigation, and the Central District's Local Rules, Mr. Larson possesses knowledge of the substantive law at issue in this dispute, given his vast experience litigating cases similar to the one currently before the Court. *See infra*, at Section C. (describing the various class action and mass action matters that Mr. Larson has litigated, including a variety of environmental and water rights matters).

### 2.   Wylie A. Aitken

Mr. Aitken has decades of experience litigating mass tort and class actions. *See Banzai Surf Co.*, Case No. 8:21-CV-01669-DOC-JDE, Dkt. No. 15-3, at 2-3. Of particular relevance, Mr. Aitken is thoroughly familiar with the duties and responsibilities of being leadership counsel in complex class action, such as the one pending before this Court. *See id.* at 3 ("I was appointed as National Liaison Counsel in *In re: Toyota Motor Corp. Unintended Acceleration Marketing Sales Practices, and Products Liability Litigation* before Judge James V. Selna and worked with a number of excellent counsel resulting in a $1.63 billion recovery."). Furthermore, Mr. Aitken has served as trial and appellate counsel in landmark consumer decisions resulting in billions of dollars in consumer recovery. *See id.* at 2-3. As a result, Mr. Aitken has extensive experience in marshalling the necessary resources to compensate victims, as well as managing the mechanisms needed to promptly and fairly distribute any recovery to class members. *Id.* at 3. This experience and expertise will be of great value to the putative class and will assist with the prompt delivery of just compensation to those affected by this environmental disaster.

**C.**     <u>Experience With Class Actions and Complex Litigation, Including Environmental Disaster Cases</u>

       1.    <u>Stephen G. Larson</u>

For the past decade, Mr. Larson has represented clients in complex litigation and related class matters. *See* Larson Decl., ¶¶ 6-16. To assist him with these matters, Mr. Larson assembled a team of esteemed litigators who have devoted a large part of their illustrious careers to environmental justice and litigation. This team includes Steven E. Bledsoe, Rick Richmond, Scott A. Sommer, and Paul A. Rigali, all of whom are actively involved in the present action. *See id.* ¶ 12. This attorney group has represented clients as plaintiffs and defendants in many of California's largest environmental and enforcement actions, which include, but are not limited to, experience with: (i) Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA" or "Superfund") enforcement, cost recovery, and clean up actions; (ii) Clean Water Act; (iii) Clean Air Act; (iv) Waters of the United States ("WOTUS") rule; (v) California Environmental Quality Act ("CEQA"); and California's Alternative Diesel Fuels ("ADF") Regulation. *See id.* ¶¶ 12-13. This experience includes the following matters:

- Representation of the Orange County Water District ("OCWD") in its efforts to remediate two plumes of groundwater contamination at the North Basin Groundwater Cleanup site. As part of the remediation efforts and investigation, OCWD and the Environmental Protection Agency successfully achieved the site's status on the National Priorities List in 2020. *See id.* ¶ 14.

- Representation of the City of Rialto in litigation and regulatory efforts to remediate groundwater at a 160-acre site. The site, which was used to process bombs and ammunition during World War II, and later, to manufacture explosives and fireworks, was contaminated with perchlorate and various other contaminants. *See id.* ¶ 15.

- Representation of a municipal water agency where a private water company illegally pumped more than $50 million worth of groundwater from an adjacent basin. *See id.* ¶ 16.

- Representation of a winery and vineyard in a dispute with a public watchdog group regarding operation-related discharges into Waters of the United States and compliance with the National Pollutant Discharge Elimination System General Permit for Storm Water Discharges Associated with Industrial Activities, the California Toxics Rule, and the North Coast Regional Water Quality Control Board's ("RWQCB") Water Quality Control Plan. *See id.* ¶ 16.

- Representation of a central valley oil field operator in litigation against the United States and State of California arising from multiple alleged discharges of crude oil into Waters of the United States. *See id.*

- Representation of a biodiesel fuel additive manufacturer in a California Air Resources Board investigation concerning NOx emissions under the Alternative Diesel Fuels (ADF) Regulation. *See id.*

Larson LLP's attorneys have achieved numerous successful outcomes for plaintiffs, resulting in hundreds of millions of dollars to the injured parties. For example, under Mr. Larson's leadership, Larson LLP has achieved the following:

- Served as lead counsel in the matters of *State of Arizona v. Volkswagon AG, et al.*, No. CV2016-005112 (Ariz. Sup. Ct. for Maricopa County) and *State of Oklahoma v. Volkswagen AG et al.,* Case No. 16-cv-759 (W.D. Okla.), which involved violations of consumer protection laws in the "diesel dupe" scandal. Mr. Larson was able to negotiate a settlement on behalf of the Arizona Attorney General that resulted in Arizona being the first state to receive direct consumer restitution payments. These payments were four times larger than what the state would have received under a previously negotiated multi-state settlement. *See id.* ¶ 8.

- Obtained a $65 million recovery from San Bernardino County for civil rights claims involving allegations of a retaliatory investigation and malicious prosecution, in *Colonies Partners LP v. County of San Bernardino,* 5:18-cv-00420. *See id*. ¶ 7. This litigation involved combing through hundreds of thousands of documents to find the proverbial "smoking gun," and a complete dissection of a decade long, multi-faceted criminal investigation into a California commercial real estate empire.

- Obtained a large monetary settlement from an insurance company alleged to have underinsured dozens of homeowners whose properties burned during Northern California wildfires. Mr. Larson also currently represents 37 additional homeowners in an action against another insurance company who underinsured properties that were burned during Northern California wildfires. *See id.*

- Served as trial counsel representing investors in a nation-wide securities class action against Snap Inc., which resulted in a $154 million settlement of all claims. *See id.*

- Obtained a multimillion-dollar settlement for the Quapaw Nation and tribe members after 17 years of litigation before the U.S. Court of Federal Claims, regarding claims that the federal government mismanaged tribal assets. *See id*. ¶ 9.

- Represented the relator in a *qui tam* civil Federal Tort Claims matter— *United States ex rel. Karin Berntsen v. Prime Healthcare Services, Inc., et al.,* Case No. 11-cv-08214 (C.D. Cal.) alleging healthcare fraud, resulting in a $65 million recovery from a regional healthcare provider. *See id*. ¶ 7.

- Secured a seven-figure judgment for an attorney in a fee dispute arising from the Indian Trust litigation and settlement, following a trial before the U.S. District Court for the District of Columbia. *See id.* at ¶ 9.

PRELIMINARY REPORT FOR INITIAL SCHEDULING CONFERENCE

- Represented hundreds of victims in the *Southern California Gas Leak Cases*, which involved a massive, months-long leak from a natural gas storage facility located in northwest Los Angeles County.  This case, too, involved complex environmental and liability issues, in which a $1.8 billion settlement was recently announced, resolving the claims of more than 35,000 plaintiffs.  *See id.* ¶ 10.

The Larson LLP team offers over 100 years of complex litigation experience in and about Southern California communities.  Mr. Larson and Larson LLP are prepared to deploy this experience and leadership in this matter for the benefit of the putative class.  In short, Mr. Larson is uniquely suited, given the extensive experience discussed herein, to handle the complex, multi-agency and jurisdictional environmental disaster litigation currently pending before this Court and to serve as Interim Co-Lead Class Counsel.

> 2.   Wylie A. Aitken

Mr. Aitken and his firm bring decades of experience representing plaintiffs and class members in bad faith insurance practices, aviation, product liability, business tort, and wrongful death/personal injury litigation, as well as class actions and MDL's.  *See Banzai Surf Co.*, Case No. 8:21-CV-01669-DOC-JDE, Dkt. No. 15-3, at 2-4.  Mr. Aitken and his team have secured precedential recoveries for the benefit of numerous California residents.  For example, under Mr. Aitken's leadership, AAC achieved the following victories:

- *In re Experian Data Breach Litigation* (Judge Guilford): Recovered $15 million for T-Mobile customers whose information was stored with Experian during a wide-scale data breach.
- *Medical Capital v. Wells Fargo and Bank of New York Mellon* (Judge Carter): Served as co-lead trial counsel in a class action which settled the day before trial resulting in a $219 million recovery against two major banks for 6,600 class members with a pro rata recovery of $22,000+.

PRELIMINARY REPORT FOR INITIAL SCHEDULING CONFERENCE

- In re: Toyota Motor Corp. Unintended Acceleration Marketing, Sales Practices, and Products Liability Litigation (Judge Selna): Served as National Liaison Counsel and achieved a $1.63 billion recovery.
- *Neal vs. Farmers Insurance Exchange* (Cal. Supreme Court):  Secured a $17 million verdict in a fire insurance bad faith case, including $15 million in punitive damages awarded to protect insurance consumers in the future.
- *Dwight Smith, et al. v. City of Santa* (Judge Walter): Served as lead trial counsel, on a pro bono basis with other prominent Orange County firms, in an action brought against a local city government involving claimed violations of the First Amendment Rights of a religious organization.

*Id.* at 2-5.

Mr. Aitken's 40+ years of experience litigating complex disputes for the benefit of numerous plaintiffs, track record of success, and proven leadership ability will provide the putative class with the necessary foundation to succeed in this dispute.

### D.    Efforts to Identify and Investigate Potential Claims

#### 1.    Stephen G. Larson

After working closely with Richard D. McCune from McCune, Wright, Arevalo, LLP, to investigate the cause of the San Pedro Bay Pipeline Oil Spill and to assess the impact of the spill on the Orange County and Los Angeles County communities, Mr. Larson has been proactive in pursuing all legal rights and remedies for Plaintiff and the putative class.  Mr. Larson's efforts have resulted in the first, significant success for Plaintiff and the putative class:  the *Order Granting Plaintiffs' Ex Parte Application for Court Order Requiring Defendants to Provide Notice Before Taking Any Action that Could Potentially Spoliate Evidence*, Dkt. No. 31.

After Defendants (i) belatedly disclosed that it divers were "cleaning" and "inspecting" the "area around the portion of the pipeline that is presumed to be the source of the leak," and "rewrapped the presumed leak location; and (ii) stalled in

executing the stipulation that would require Defendants to provide Plaintiff notice of any activities that could result in the spoliation or augmentation of evidence, Mr. Larson determined that *ex parte* relief was necessary to preserve evidence critical to Plaintiff and the putative class's claims.  *See* Dkt. No. 22-1.  The Court agreed; it granted Plaintiff's requested relief *in full*, namely that Defendants must notify Plaintiff and the putative class in writing before Defendants take any action that will or could result in spoliation of the evidence.  *See Taylor v. Schneider Nat'l Carriers, Inc.*, No. ED CV 10-923-GHK, 2010 WL 11515254, at *2 (C.D. Cal. Oct. 27, 2010) (appointing counsel that "ha[d] undertaken greater investigative efforts on behalf of the putative class and [was] therefore 'best able to represent the interests of the class.'") (quoting Fed. R. Civ. P. 23(g)(2)).

Since this success, Mr. Larson and Larson LLP have been actively pursuing informal discovery of facts for the benefit of the putative class, as evidenced by Larson LLP's November 18, 2021, letter to Defendants' counsel requesting that Defendants provide "all information" relating to various categories of information vital to the preservation of Plaintiff's claims.  Larson Decl., ¶ 19, Ex. A; *see Friedman v. Guthy-Renker LLC, et al.*, No. 2:14-cv-06009-ODW(AGRx), 2016 WL 2758240, at *3 (C.D. Cal. May 12, 2016) ("Plaintiffs' counsel hav[ing] invested a significant amount of time and resources investigating the claims in this case . . . weighs heavily in Plaintiffs' counsel's favor").  Larson LLP has also been actively working with plaintiffs' counsel in the related actions with respect to strategy, filings required pursuant to the Federal Rules of Civil Procedure, and case management stipulations.  *See* Larson Decl., ¶ 19.

2.     Wylie A. Aitken

As previously represented to the Court, Mr. Aitken and his firm have "performed substantial work in 'identifying or investigating potential claims in the action' from the moment news of the oil spill broke."  *See Banzai Surf Co.*, Case No. 8:21-CV-01669-DOC-JDE, Dkt. No. 15, at 15 (quoting Fed. R. Civ. Proc. Rule

- 12 -

23(g)(1)(A)(i)).  The substantial work performed includes early efforts to discover relevant facts and evidence from Defendants, the submission of FOIA requests, and collaboration with plaintiffs' counsel across the related actions to further develop the putative class's factual allegations.  *Id.*

### E.  The Resources that Counsel Will Commit to Representing the Class

In addition to the substantial relevant complex litigation experience, expertise, and skill set, Mr. Larson and Mr. Aitken possess more than sufficient resources and time to aggressively prosecute the present matters.

### 1.  Stephen G. Larson

Larson LLP boasts over 30 litigators, many of which have served as judicial law clerks for federal district and circuit court judges and have practiced at the nation's leading law firms and/or for the Federal Government.  *See* Larson Decl., ¶ 11.  Mr. Larson has staffed four of his partners on this matter—Steven E. Bledsoe, Rick Richmond, Scott A. Sommer, and Paul A. Rigali—in addition to a team of associates.  *See id.* ¶ 12.  The firm's immense growth over the last 6 years is evidence of its strength, successes, and client satisfaction.  Because of the firm's size and experience, it is prepared to devote the necessary human and financial capital to efficiently, yet thoroughly, litigate this matter on behalf of the putative class.  *See Cooperman v. Galeos LLC, et al.*, No. SACV 10-01815-JVS(FFMx), 2011 WL 13227858, at * 2 (C.D. Cal. April 4, 2011) (recognizing the commitment of "multiple lawyers" and devotion of "all necessary resources" during litigation stages to be important).

### 2.  Wylie A. Aitken

AAC is no stranger to litigation of this scope and magnitude.  Indeed, its reputation is, in part, based on representing classes such as the one proposed in this litigation.  *See Banzai Surf Co.*, Case No. 8:21-CV-01669-DOC-JDE, Dkt. No. 15, at 22.  Furthermore, because AAC "routinely secures seven- and eight-figure settlements for its plaintiffs," it has the financial resources to litigate this matter from

- 13 -

1   inception to conclusion.  *Id.*  Moreover, given its experience in matters such as this, it

2   knows how to balance the demands of this case with the rest of its practice.

3                                    *       *       *

4          Larson LLP's and AAC's commitment of human and financial resources,

5   coupled with their understanding of the time needed to prosecute the present

6   litigation and complex legal and procedural issues in dispute, make each, individually

7   and together, well suited to serve as Interim Co-Lead Class Counsel.

8          Accordingly, Plaintiff requests that the Court enter an order appointing

9   Stephen G. Larson of Larson LLP and Wylie A. Aitken of AAC as Interim Co-Lead

10  Class Counsel.

11  **F.      A Lean Leadership Structure Will Best Serve the Interests of the**

12  **         Putative Class Members by Providing Clear Decision-Making**

13  **         Authority and Avoiding the Inefficiencies of Leadership by**

14  **         Committee**

15         The lean leadership structure proposed by Larson LLP will best serve the

16  clients and Court for decision making and efficiency.  An expanded or bloated

17  leadership structure often results in significant duplication of effort and other

18  inefficiencies, including complicating and delaying decision making.  In addition to

19  alleviating those concerns, a lean leadership structure will also preempt the potential

20  unseemly disputes and infighting that often arise in these types of cases.

21         The proposed leadership structure is not to suggest that only the two leadership

22  firms will perform all of the work or will otherwise exclude the other firms that have

23  the experience and interest in preparing the case for trial.  Just the opposite.  There

24  are a number of accomplished lawyers and strong firms within the group, and they

25  can and should be involved in the case.  But the assignments to those firms should be

26  made by a leadership and decision-making structure that has clear authority to avoid

27  the inefficiencies and duplication of effort that are inevitable with leadership by

28  committee, as well as to minimize disputes between the firms during the litigation

and after the case is resolved.  Likewise, if the case will benefit from formal committees, a lean leadership structure will provide for lead counsel to decide if formal committee designations and assignments are warranted based on needs of the case rather than other factors that often influence those decisions.

## II.     The Court Should Consolidate the Cases

Plaintiff believes that the Court should consolidate the below cases, as well as any related cases filed in or removed to this Court, *at this time*.  *See Benkle v. Ford Motor Co.*, No. SACV161569DOCJCGX, 2017 WL 8220707, at *4 (C.D. Cal. Apr. 28, 2017) (Carter, J.) ("Ultimately, the decision whether to consolidate rests in the Court's sound discretion.").  The consolidated action should be called "*In re Amplify Energy San Pedro Bay Pipeline Oil Spill*," or a name substantially similar if preferred by the Court. The following related actions are currently pending before this Court:

| Case Title | Case Number |
|---|---|
| **Putative Class Actions** | |
| *Peter Moses Gutierrez v. Amplify Energy Corp., et al.* | 8:21-cv-01628 |
| *Stephen E. Samuelian, et al. v. Amplify Energy Corp., et al.* | 8:21-cv-01658 |
| *Banzai Surf Company, LLC v. Amplify Energy Corp., et al.* | 8:21-cv-01669 |
| *Quality Sea Food, Inc., et al. v. Amplify Energy Corp., et al.* | 8:21-cv-01680 |
| *Davey's Locker Sportfishing, Inc. et al v. Amplify Energy Corp., et al.* | 8:21-cv-01684 |
| *Ketcham Tackle LLC v. Amplify Energy Corp., et al.* | 8:21-cv-01685 |
| *Newport Surfrider, LLC v. Amplify Energy Corp., et al.* | 8:21-cv-01686 |
| *Bradley Bitton, et al. v. Amplify Energy Corp., et al.* | 8:21-cv-01694 |
| *James Whelan, et al. v. Amplify Energy Corp., et al.* | 8:21-cv-01706 |
| *Beyond Business Incorporated v. Amplify Energy Corp., et al.* | 8:21-cv-01714 |
| *N.S.T. v. Amplify Energy Corp., et al.* | 8:21-cv-01722 |

| *East Meets West Excursions, et al. v. Amplify Energy Corp., et al.* | 8:21-cv-01725 |
|---|---|
| *Charlie's Gyros, Inc. v. Amplify Energy Corp., et al.* | 8:21-cv-01738 |
| **Single Plaintiff Action** | |
| *Hill's Boat Service, Inc. v. Amplify Energy Corp.*[4] | 8:21-cv-01734 |

All of the above cases involve common questions of law and fact.  *See* Fed. R. Civ. Proc. Rule 42(a).  Indeed, each of the complaints arise from the San Pedro Bay Pipeline Oil Spill, and thus allege similar causes of action, theories of liability, and damages.  Accordingly, Plaintiff believes that there will be substantial overlap in fact and expert discovery, as well as the legal and factual issues that will be submitted to the Court for resolution prior to trial.  Consolidation, at this time, will conserve party resources, decongest the Court's docket, align critical dates and deadlines, and assist in the orderly, prompt resolution of the legal and factual issues that will be presented to the Court for resolution.  *See In re Oreck Corp. Halo Vacuum & Air Purifiers Mktg. & Sales Practices Litig.*, 282 F.R.D. 486, 490 (C.D. Cal. 2012) ("To determine whether to consolidate, a court weighs the interest of judicial convenience against the potential for delay, confusion and prejudice caused by consolidation.") (internal citation omitted); *Greenberg v. Giannini*, 140 F.2d 550, 552 (2d Cir. 1944) (consolidation conserves judicial resources and avoids duplication of efforts).

Consolidation will not cause any inconvenience, delay, or extra expense as these cases are in their infancy.  Instead, consolidation will minimize delay and costs and make the litigation more convenient and cost-efficient for the parties and the Court.  In fact, to date, there has already been substantial cooperation and coordination between Plaintiffs' counsel in the related cases.  Consolidation by order

---

[4] The plaintiff in *Hill's Boat* intends to join one of the consolidated class actions and has agreed to place its case on the same schedule as the putative class action matters. *See* Dkt. No. 34, at 3.

PRELIMINARY REPORT FOR INITIAL SCHEDULING CONFERENCE

of this Court will simply formalize what is already occurring and open additional time and cost-saving avenues for the Plaintiffs adversely affected by the San Pedro Bay Pipeline Oil Spill.  *Compare United Mine Works of Am. v. Gibb*, 383 U.S. 715, 724 ("[J]oinder of claims, parties and remedies is strongly encouraged.") *with* Fed. Rule Civ. Proc. Rule 1 (stating the Federal Rules of Civil Procedure "should be construed, administered, and employed by the court and the parties to secure the just, speedy, and inexpensive determination of every action and proceeding").

## III.  <u>Proposed Coordinated Plan</u>

As set forth in the Joint Rule 26(f) Report (Dkt. No. 34), the parties agree that a coordinated plan of action for all related matters is necessary.  A coordinated plan will minimize case disruptions occasioned by calendar conflicts, avoid duplicative litigation efforts, streamline the presentation of factual and legal issues, decongest the Court's docket, and avoid potentially inconsistent rulings.  *See, e.g., In re Aviation Products Liability Litigation*, 347 F. Supp. 1401, 1403-94 (J.P.M.L. 1972) ("Only through a coordinated pretrial discovery program, tailored to fit the discovery needs of each party and supervised by a single judge, can overlapping and duplicitous discovery be avoided and the just and efficient conduct of the litigation assured.").

Larson LLP supports a coordination plan that includes the following:

- Consolidation of the 14 matters arising from the San Pedro Bay Pipeline Oil Spill before this Court.
- The filing of one or more consolidated amended complaint(s) (with all relevant parties, claims, and classes contained therein), within thirty (30) days of consolidation and appointment of interim lead class counsel.  Dkt. No. 34, at 7.
- Sixty (60) days after the filing of the consolidated amended complaint(s), Defendants' responsive pleading(s) will be due. Dkt. No. 34, at 7.
- Entry of a protocol for the exchange of electronically stored information ("ESI"), and an agreed protective order (or competing proposed orders if

agreement cannot be reached), within 21 days following appointment of interim class counsel.  *Id.* at 11.

- Initial disclosures pursuant to Federal Rules of Civil Procedure 26(a) by December 7, 2021 (these disclosures have already been made).  *Id.*

- Discovery on the merits, damages, and class certification proceeding simultaneously (not formally phased or bifurcated), to be followed by expert discovery.  Service of discovery requests shall be made by email on the Parties.  *Id.* at 12.

- Entry of a protocol for depositions that sets forth (1) noticing procedures, (2) scheduling procedures, (3) location of depositions; (4) attendance restrictions; (5) use and labeling of documents, (6) duration, (7) streamlined dispute resolution; (8) video recording procedures; (9) and correction and signing of depositions.

- The limitation on the number of depositions imposed by Rule 30(a)(2) should be modified.  *Id.* at 15.

- This case is to be tried to a jury.  The Parties believe the trial will likely take a minimum of 28 trial days after *voir dire*.  *Id.* at 22.

The parties agree that this matter is appropriately designed complex pursuant to Local Rule 26-1(a), and that the Manual for Complex Litigation is a valuable resource for the parties and will endeavor to use its procedures as appropriate (*id.* at 26).  Larson LLP is supportive of the case schedule proposed by Plaintiffs in the Joint Rule 26(f) Report, as follows:

| Event | Date |
|---|---|
| Initial Disclosures | December 7, 2021 |

| Filing consolidated complaint(s) | 30 days from appointment of Interim Class Counsel |
| --- | --- |
| Defendants' response to complaint(s) | 60 days after filing of consolidated complaint(s) |
| Close of fact discovery | September 16, 2022 |
| Expert reports | October 14, 2022 |
| Expert rebuttal reports | November 11, 2022 |
| Close of expert discovery | December 16, 2022 |
| Class certification motion to be filed | January 27, 2023 |
| Opposition to class certification motion to be filed | March 3, 2023 |
| Reply to class certification motion to be filed | March 31, 2023 |
| Hearing on class certification | April 17, 2023 |
| Final motion cutoff | June 16, 2023 |
| Pretrial Conference | July 17, 2023 |
| Trial | September 5, 2023 |

PRELIMINARY REPORT FOR INITIAL SCHEDULING CONFERENCE

Dated: December 10, 2021                     Respectfully Submitted,

**LARSON LLP**

By:     /s/ Stephen G. Larson
        Stephen G. Larson
        Steven E. Bledsoe
        Rick Richmond
        Paul A. Rigali

        and

        **MCCUNE WRIGHT AREVALO, LLP**
        Richard D. McCune
        David C. Wright
        James G. Perry

PRELIMINARY REPORT FOR INITIAL SCHEDULING CONFERENCE